Burke, J.
Plaintiff-respondent, David Bolm, was seriously injured when the 1966 Triumph motorcycle he was operating collided with an automobile which negligently turned across his lane of traffic.[1] On impact with the car, plaintiff was projected forward over the automobile, coming to rest in the street some five or six feet beyond it. In the course of the accident, plaintiff apparently came into contact with a metal luggage rack or “ parcel grid ” which was affixed to the top of his motorcycle’s gas tank about three inches above and two and three-quarter inches in front of the saddle. Contact with the grid — which followed immediately the initial impact between the cycle and *154 the automobile — allegedly caused severe pelvic and genital injuries, including a resultant sterility.
In addition to the suit against the owner and operator of the automobile involved in the collision, plaintiff commenced this action against the appellants, The Triumph Corporation and Birmingham Small Arms, Ltd., réspectively the distributor and manufacturer of his Triumph- motorcycle, contending that the placement of the parcel grid constituted a negligent defect in the design of the motorcycle which, though it admittedly did not cause the accident, aggravated, enhanced and contributed to his injuries. On three causes of action, damages are sought for negligence, breach of warranty ánd “ strict liability in tort.”
Special Term reluctantly granted defendants’ motion for summary judgment on constraint of Edgar v. Nachman (37 A D 2d 86, mot. for lv. to app. den. 29 N Y 2d 483) and Campo v. Scofield (301 N. Y. 468), noting that it is “ difficult to discern why automotive vehicle design defect cases should not be determined by the application of traditional rules of [tort] law ’ ’ which would place upon the manufacturer “ an obligation to manufacture and design the vehicle in a manner that affords reasonable protection under the circumstances against injuries to operators and passengers using it for the purpose for which it was intended ” (citing Restatement, 2d, Torts, §§ 395, 398; Larsen v. General Motors Corp., 391 F. 2d 495;, Harper and James, Law of Torts, Supplement to Vol. 2, pp. 213-214). Under constraint of precedent the court upheld the New York rule, which, it concluded, “ limits the liability of the car manufacturer to unsafe design characteristics which are the cause of the accident in which the injuries are sustained and immunizes the manufacturers from any liability for design defects which only aggravate the damages ” (citing Edgar, supra; Campo, supra). “ [I]t is the teaching of Edgar ”, Special Term continued, “ that the liability of the' manufacturer does not extend to injuries sustained as a consequence of ‘ the second collision ’ [i.e., that between the user of the vehicle and the vehicle itself, which occurs as a result of the initial impact] * * * In the instant case * * * the head-on collision of the moving vehicles was obviously the direct cause of the injuries as well as the accident and the ‘ second collision rule ’ mandates dismissal ”, Moreover, the court felt that, as in Edgar v. Nachman *155 (supra), the design defect in this case was not “ latent or concealed.”
The Appellate Division, by a 3-2 vote, reversed Special Term’s order and denied the defendants’ motion for summary judgment. Both the majority and the dissent rejected the “ second collision rule ” as a bar to the action. Citing Larsen v. General Motors Corp. (391 F. 2d 495, supra), the entire court concluded that injuries resulting from a latent defect in design which, to the reasonably prudent manufacturer, creates a foreseeable risk of harm should be actionable notwithstanding the fact that the defect may not have been a causative factor of the initial accident. The general foreseeability of the inevitable automobile accident led the majority to adopt the position of the Larsen court which held: “ Where the manufacturer’s negligence in design causes an unreasonable risk to be imposed upon the user of its products, the manufacturer should be liable for the injury caused by its failure to exercise reasonable care in the design. These injuries are readily foreseeable as an incident to the normal and expected use of an automobile. WThile automobiles are not made for the purpose of colliding with each other, a frequent and inevitable contingency of normal automobile use will result in collisions and injury-producing impacts. No rational basis exists for limiting recovery to situations where the defect in design or manufacture was the causative factor of the accident, as the accident and the resulting injury, usually caused by the so-called ‘ second collision ’ of the passenger with the interior part of the automobile, all are foreseeable. WThere the injuries or enhanced injuries are due to the manufacturer’s failure to use reasonable care to avoid subjecting the user of its products to an unreasonable risk of injury, general negligence principles should be applicable.” (391 F. 2d, at p. 502.)
The disagreement at the Appellate Division related to the nature of the defect in this case. The majority opinion, per Presiding Justice Goldman", expressed the view that the parcel grid constituted a latent defect, concluding that although the grid itself was patent or obvious, the inherent danger in such a design was not. The dissenters, Justices Del Vecohio and Wither, would have affirmed the order granting summary judgment to the defendants based upon a finding that the danger from the negligently placed parcel grid was “ open, patent and *156 known to plaintiff Moreover, the dissent would find the failure of the complaint to specifically allege “ a latent or hidden defect or concealed danger ” to he fatal to the cause of action (citing Inman v. Binghamton Housing Auth., 3 N Y 2d 137). The nonfinal order denying the defendants’ motion for summary judgment was appealed to this court by permission of the Appellate Division upon the following certified question: “ Was the order of this court entered February 23,1973 properly made? ”
The certified question should be answered in the affirmative and the order of the Appellate Division should be affirmed. We add, however, that the question as to whether the design defect was latent or patent is a factual one for the jury which, under the circumstances here present, should not have been resolved as a matter of law by the Appellate Division.
The threshold issue on this appeal concerns the liability of a manufacturer of motor vehicles for defects in design which do not cause accidents but do enhance or aggravate injuries. (See Ann. Product Liability — Defect Enhancing Injury, 42 ALE 3d 560.) Appellants contend that Campo v. Scofield (301 N. Y. 468, supra) is dispositive, mandating a determination that a latent design defect which is not causative of the accident gives rise to no liability for injuries resulting from “ the second collision.” We do not agree.
In Campo v. Scofield (supra), we essentially reaffirmed the principle laid down in MacPherson v. Buick Motor Co. (217 N. Y. 382) that a manufacturer is under a duty to construct a product which is free of latent or hidden defects. Expressing the converse in Campo, Judge Fuld, writing for a unanimous court, stated: “ If a manufacturer does everything necessary to make the machine function properly for the purpose for which it is designed, if the machine is without any latent defect, and if its functioning creates no danger or peril that is not known to the user, then the manufacturer has satisfied the law’s demands * * * [T]he manufacturer is under no duty to render a machine or other article ‘ more ’ safe — as long as the danger to be avoided is obvious and patent to all ” (301 N. Y, at p. 472; see, also, Inman v. Binghamton Housing Auth., 3 N Y 2d 137, 145, supra). Clearly left intact by Campo, then, is the obligation of the manufacturer to market a product which, *157 in the normal course of its intended functioning, is free of any latent dangers.
In Edgar v. Nachman (37 A D 2d 86, mot. for lv. to app. den. 29 N Y 2d 483, supra), the Appellate Division, Third Department, first adopted the “ second collision rule.” There, the gas cap on the front-end gas tank of a 1963 Volkswagen was alleged to be defectively designed, causing the cap to fly off on impact. As a result of the defective design the gasoline ignited and the occupant of the Volkswagen was fatally burned. Relying on Campo v. Scofield (supra), the court concluded that injuries resulting from a design defect which did not cause the accident but merely aggravated or enhanced the injuries were not actionable.[2] In citing Campo for such a broad proposition, the Edgar court necessarily rested on one of two alternative rationales: either it considered the danger of all “ second collision ” injuries to be patent or obvious, no matter what the cause; or it considered the very involvement in a collision to be outside the “ intended use ” of the vehicle so that the injuries resulting therefrom — “ second collision” injuries — are not due to a breach of duty. While the latter alternative finds some support in other jurisdictions (see, e.g., Evans v. General Motors Corp., 359 F. 2d 822; but see Larsen v. General Motors Corp., 391 F. 2d 495, supra), we find neither rationale tenable.
As was stated in Campo, a manufacturer is under no duty to design a product which is accident-proof. There is no liability on the part of a manufacturer for injuries resulting from dangers which are patent or obvious. Thus, the operator of a motor vehicle assumes the dangers which inhere in its operation, including the probability of many “ second collision ” injuries. The extent of that assumption, however, should be no greater than those “ second collision ” injuries which would result from an impact in a reasonably designed and constructed vehicle. While a vehicle need not be made ‘[1] crash-worthy ’ ’, the manufacturer should not be permitted to argue that a user of its product assumes dangers from unknown or latent defects, either in construction or design, which the manufacturer can reasonably foresee will cause injury on impact. The standards for *158 imposing liability f.or such unreasonably dangerous design defects are, thus, general negligence principles (see Larsen v. General Motors Corp., supra; Restatement, 2d, Torts, § 395; Noel, Manufacturer’s Negligence of Design or Directions for Use of. a Product, 71 Yale L. J. 816, 818).
The argument posited by the U. S. Court of Appeals for the Seventh Circuit in Evans v. General Motors Corp. (359 F. 2d 822, supra) — that a collision is not within the 11 intended use ” of a motor vehicle — was, in our opinion, properly refuted by the Eighth Circuit in Larsen v. General Motors Corp. (supra; see, also, Grundmanis v. British Motor Corp., 308 F. Supp. 303 [Wis.]; Dyson v. General Motors Corp., 298 F. Supp. 1064 [Pa.]; Cronin v. J. B. E. Olson Corp., 8 Cal. 3d 121; Badoreh v. General Motors Corp., 90 Cal. Rptr. 305; Mieher v. Brown, 3 Ill. App. 3d 802, revd. on other grounds 54 Ill. 2d 539). As the Larsen court stated: “ The intended' use and purpose of an automobile is to travel on the streets and highways, which travel more often than not is in close proximity to other vehicles and at speeds that carry the possibility, probability, and potential of injury-producing impacts. The realities of the intended and actual use are well known to the manufacturer and to the public and these realities should be squarely faced by the manufacturer and the courts. We perceive of no sound reason, either in logic or experience, nor any command in precedent, why the manufacturer should not he held to a reasonable duty of care in the design of its vehicle consonant with the state of the art to minimize the effect of accidents. The manufacturers are not insurers but should be held to a standard of reasonable care in design to provide a reasonably safe vehicle in which to travel ” (391 F. 2d 502-503).
The extension of liability proposed herein — that of the manufacturer for unreasonably dangerous (latent) design defects which enhance or aggravate injuries — was presaged by, and is consonant with, our recent holding in Codling v. Paglia (32 N Y 2d 330). As was pointed out in Codling, liability for defective products has, over the years, been increasingly shifted to the responsible manufacturer in order “ to avoid injustice and for the protection of the public ” (32 NY 2d, at p. 338). Today, more than ever before, it is the manufacturer who is solely in a nosition to prevent injuries from latent defects. Thus in *159 Codling, it was noted that “ ‘ [manufacturers of articles which may be a source of danger to several people if not properly manufactured should not be immune from liability for breach of implied warranty, a tortious wrong, to persons injured by a defectively manufactured article, where the manufacturer could reasonably contemplate .injury to such persons by reason of the defect ’ ” (32 N Y 2d, at p. 340). There, the manufacturer of a defective product was held to be liable, “ under a doctrine of strict products liability,” if the defect “ was a substantial factor in bringing about [the] injury or damages; provided: (1) that at the time of the occurrence the product is being used * * * for the purpose and in the manner normally intended, (2) that if the person injured or damaged is himself the user of the product he would not by the exercise of reasonable care have both discovered the defect and perceived its danger, and (3) that by the exercise of reasonable care the person injured or damaged would not otherwise have averted his injuries or damages ” (32 NY 2d, at p. 342). Neither sound policy nor reason can be found to justify a distinction between the liability of the manufacturer whose defective item causes the initial accident and that of the manufacturer whose defective product aggravates or enhances the injuries after an intervening impact. Assuming that in each case the defect is “ a substantial factor in bringing about [the] injury or damages ”, what possible justification is there for disallowing a claim against the manufacturer whose defective product results in injury after a foreseeable intervening cause? It is well settled that foreseeable intervening cause will not relieve a wrongdoer of liability in other situations (41 N. Y. Jur., Negligence, § 38; 2 Harper and James, Law of Torts, § 20.5). We can perceive no reason why a manufacturer of motor vehicles should be held to a lesser degree of liability. Accordingly, we reject the ‘ ‘ second collision rule ” in favor of traditional rules of negligence and warranty.
As mentioned above, we qualify our affirmance with a notation that the issue as to the latency or potency of the dangers from the design defect — if the jury determines there was a design defect — presents a question of fact which should not have been resolved by the Appellate Division on appeal from the motion for summary judgment. As Chief Judge CabdOzo stated in *160 Palsgraf v. Long Is. R. R. Co. (248 N. Y. 339, 345), “ The range of reasonable apprehension is at times a question for the court, and at times, if varying inferences are possible, a question for the jury.” Here the duty and, thus, the liability of the manufacturer turn upon the perception of the reasonable user of the motorcycle as to the dangers which inhere in the placement of the parcel grid on top of the gas tank. That is a question of fact which should be submitted, with the other issues, for jury consideration.
Finally, we conclude, as did the Appellate Division majority, that the failure of the complaint to specify that the defect complained of was “ latent ” should not, under the liberal provisions of CPLR 3026, be considered fatal. Inman v. Binghamton Housing Auth. (3 N Y 2d 137, supra) which held otherwise, was a pre-CPLR case.
Accordingly, the order appealed from should be affirmed.

. The underlying motion on this appeal being addressed to the pleadings, plaintiff’s factual allegations are, for purposes of the appeal, deemed true (see Tobin v. Grossman, 24 N Y 2d 609, 612).

. The Edgar court never reached the question of latency since the rule it established would disallow a claim based upon a defect of the most latent nature if the defect did not cause the initial accident.