OPINION OF THE COURT
John S. Lockman, J.
Motion by defendant county to correct the judgment entered March 13, 1982 upon a jury verdict and cross motion by plaintiff to order a further assessment of damages, fix the proportional responsibility for causing the accident as between plaintiff and the defendant county at 50-50 and for a new trial on damages only are disposed of in the following manner.
By order dated January 5,1981, plaintiff was required to serve a supplemental bill of particulars pursuant to a demand by the Honda defendants despite the fact that a note of issue had already been filed. That bill contained the following particulars in response to the following demands:
“1. With regard to the claim of product defect concerning the hinged fuel filler cap * * * state the following;
“(a) Does plaintiff claim that the fuel filler cap opened during the course of the subject accident?”
Answer: “yes.” * * *
*120 “2. With regard to the claim as contained in the Bill of Particulars dated January 25, 1980, to the effect that the motorcycle was improperly designed in that it became unstable in the event of a flat tire causing the motorcycle to run out of control, state the following;
“(a) State with specificity each and every component of the motorcycle which plaintiff claims was improperly designed as aforesaid.”
Answer: “Hinged fuel filler release cap mechanism.”
“(b) With regard to 2(a) above state specifically the manner in which each and every said component caused the motorcycle to become unstable in the event of a flat tire.”
Answer: “Not applicable.”
During the plaintiff’s case he offered an expert witness who testified with respect to the construction and maintenance of the intersection and the positioning of the signs. A second expert testified as to the design and operation of the fuel filler cap release. A recall notice was introduced with respect to the filler cap and plaintiff attempted unsuccessfully to introduce video tapes of various tests in which the effects upon the fuel tank and filler cap of collisions with various objects at various speeds were depicted and also of various impact studies in which a filled tank unattached to any motorcycle was smashed into a fixed object or dropped or struck with an object. No testimony was elicited with respect to the steering mechanism of the motorcycle.
After the conclusion of the plaintiff’s and the defendant county’s cases and before the Honda defendants began their case, plaintiff settled his claim against the Honda defendants for $30,000. This was on January 29, 1982. Upon plaintiff’s decision to settle with the Honda defendants and proceed against the county an off-the-record in camera discussion took place during which one of the topics was section 15-108 of the General Obligations Law. This discussion is reflected in the following in-court statement in which the effect of the partial settlement was explained to plaintiff:
“The court: When it’s settled, it’s settled forever.
*121 “Also, I think your lawyer touched on this, but I want to make it clear, that the claim against the County, which is going to continue, you cannot recover from the County for any pain or suffering or injury that was caused by the burns that you claim Honda caused you.
“In other words, the County isn’t going to pay you what Honda caused, if the jury finds that Honda caused that injury, or for any other reason it’s demonstrated that it’s Honda’s share of your pain and suffering, you can’t recover from the County?
“The witness: I understand this.
“The court: And there’s a practical way of handling it so we don’t confuse the jury. Your lawyer and I and the lawyer from the County have had a conversation about this and we came to the conclusion that the fairest way to present it to the jury is that they are not to award any damages otherwise it would be a rather complex situation where you would recover and there would be indemnification back from Honda, and since Honda has settled that case there would have to be a calculation decreasing the amount of the award, and rather than go through this complex procedure it has been agreed upon that the jury would be told that whatever amount of money is attributable to Honda, they cannot charge to the County.”
This explanation of how the parties had agreed to handle section 15-108 of the GeneralObligations Law addressed to a layman may be less than precise, but it was made in the presence of all the attorneys and was not objected to or corrected.
Following the settlement plaintiff and defendant county offered rebuttal witnesses. Defendant county offered Daniel Toaspan who was qualified as an expert on motorcycles. He testified to having ridden a motorcyle for great distances with a flat tire. He was familiar with the model Honda motorcycle involved in the accident, but was not asked about its steering mechanism. Indeed, at one point on cross-examination Mr. Toaspan stated that a motorcycle is not steered by moving the handle bars but by adjusting one’s weight or “leaning into a turn”.
Following the conclusion of testimony a conference was held on the charge and counsel was afforded an opportu *122 nity to read in advance the court’s charge. Defendant county made no request that Honda be included in the apportionment of damages. On damages the jury was instructed, “In determining the injury or injuries for which Plaintiff is entitled to recover you are to exclude from your consideration any burns which the Plaintiff may have sustained.” The jury returned a verdict which found the plaintiff 90% responsible for causing the accident and the county 10% responsible. It awarded damages for the injury, pain and suffering of $1,158,000 of which the county’s share was $115,800 plus a proportionate share of the medical expenses.
Defendant county now applies for an order modifying the judgment pursuant to CPLR 5015 to apply the $30,000 in reduction of its obligation. It contends that the Honda defendants were joint tort-feasors and pursuant to section 15-108 of the General Obligations Law the amount paid by them in settlement must be credited against the total damages.
Defendant county has unquestionably waived any right to an apportionment of fault with respect to the Honda defendants, but the question remains whether the $30,000 settlement should be credited against plaintiff’s recovery. (See Bonnot v Fishman, 88 AD2d 650.) In Bonnot v Fishman (supra), plaintiff received improper medical treatment for injuries sustained in an auto accident. She sued the treating physician and the hospital. During the trial a settlement was reached with the hospital for $45,000 and the case proceeded against the doctor. After the verdict the doctor invoked section 15-108 of the General Obligations Law. “We do not believe, as plaintiffs urge, that [the doctor] waived his right to any reduction by failing to present the issue of the hospital’s negligence. To so hold would award plaintiffs with a windfall of $45,000 in excess of the judgment”. (Bonnot v Fishman, supra, p 651.) This same reasoning leads to a contrary result in the instant case.
In the Bonnot case the physician and the hospital clearly were “liable or claimed to be liable in tort for the same injury” (General Obligations Law, § 15-108, subd [a]). The injury consisted of a shortened leg and knee flexion sus *123 tained during the corrective surgery. Had plaintiff’s allegation with respect to the defective steering mechanism been presented to the jury, the county and the Honda defendants would equally clearly be “liable or claimed to be liable * * * for the same injury”. But, as plaintiff argues, the claim with respect to the steering mechanism was abandoned in the supplemental bill of particulars. Having abandoned that claim, there was no evidence adduced by plaintiff or even by the defendant county which linked the Honda defendant causally to plaintiff’s collision with the signpost. Rather the liability of the Honda defendants was premised upon a so-called “second collision” theory.
“There is no liability on the part of a manufacturer for injuries resulting from dangers which are patent or obvious. Thus, the operator of a motor vehicle assumes the dangers which inhere in its operation, including the probability of many ‘second collision’ injuries. The extent of that assumption, however, should be no greater than those ‘second collision’ injuries which would result from an impact in a reasonably designed and constructed vehicle.” (Bolm v Triumph Corp., 33 NY2d 151, 157).
Thus the Honda defendants on the evidence presented to the jury could not be held liable for the injuries the plaintiff would have sustained even had the gas filler cap been designed so as not to open upon an impact such as occurred in this case. The county and the Honda defendants were successive, rather than joint, tort-feasors. (IB Warren, Negligence, ch 10, Indemnity and Contribution, § 3.05, subd [1].) While the county could be held liable for all injuries proximately caused by its negligence including the aggravation of such injuries by the Honda defendants, the Honda defendants could only be liable “for the aggravation caused by [their] own conduct.” (Zillman v Meadowbrook Hosp. Co., 45 AD2d 267, 270.) With the consent of counsel for the defendant county, the determination was made that to avoid a double recovery the jury would be instructed not to consider the plaintiff’s burn injuries in assessing damages against the county since the burn injuries were the only injuries causally related to the allegedly defective gas filler cap. These injuries for which the defendant county *124 could have been held liable (although with right of contribution) having already been removed from the jury’s consideration, to further reduce plaintiff’s verdict by the amount of his settlement with the Honda defendants would effectively give the county a double setoff.
The motion and cross motion are denied.