**Paula TINER and Gregory Tiner, Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**Civ. A. No. 93–CV–930 (RSP/GJD).**

United States District Court,
N.D. New York.

Dec. 29, 1995.

*Bros. Construction, Inc.,* 813 F.Supp. 643, 648 (N.D.Illinois, E.D.1993).

**114**

Carroll, Carroll, Davidson, Franklin & Young, Syracuse, New York, for Plaintiffs (Eugene B. Young, of counsel).

Lavin, Coleman, Finarelli & Gray, New York City, for Defendant (Steven R. Kramer, of counsel).

## MEMORANDUM–DECISION AND ORDER

POOLER, District Judge.

### INTRODUCTION

Defendant General Motors Corporation ("GM") moved for summary judgment dismissing all claims by plaintiffs Paula and Gregory Tiner (collectively, "the Tiners"). Paula Tiner ("Tiner") claims that she injured her neck, upper back, chest, and knees when she drove a GM-manufactured 1991 Chevrolet Caprice into an unlit lamp pole in a parking lot. Tiner believes that GM's defective design, manufacture, or installation of the air bag [1] and driver's side seat belt in the Caprice was either the sole or a contributing cause of her injuries. GM argues that Tiner has raised a crashworthiness claim because she does not allege that the defects in the air bag or seat belt caused her accident. GM thus contends that Tiner must establish a prima facie case showing that: (1) the air bag and seat belt were defectively designed; and (2) she suffered enhanced injuries as a result of those defects. GM also argues that Tiner's failure to ensure that the seat belts were

---

1. GM at times refers to the air bag as a "supplemental inflatable restraint system" or "SIR" and to the seat belt as a "lap/shoulder seat belt restraint system." *See, e.g.,* Def.Mem. at 2. I have adopted the terms air bag and seat belt for the sake of simplicity and without any implication as to the technical nature of these devices. Similarly, although both Paula and Gregory Tiner are plaintiffs, I refer only to Paula Tiner because she drove the car and received the injuries. I will refer to the Tiners collectively only when necessary for clarity.

preserved as evidence should preclude her from making any claims concerning them. Tiner responds (1) that because of the nature of the allegedly defective equipment, she is not required to establish the elements of a second collision case; (2) that, in any event, she has established a prima facie case on each of these elements; and (3) that she bears no responsibility for the destruction of the seat belts in the Caprice. I agree that the crashworthiness, or second collision, doctrine governs Tiner's complaint. Because Tiner failed to offer any competent proof of a defect in the seat belt or of enhanced injuries due to the alleged defects in the air bag, I grant defendant summary judgment dismissing the complaint.

## BACKGROUND

During the early morning hours of September 25, 1991, Tiner, who was acting in the course of her employment as a deputy sheriff with the Onondaga County Sheriff's Department, drove her patrol car into a pole set in concrete in a parking lot. Tiner estimated that her speed at the time of the collision was approximately twenty miles per hour. Another deputy sheriff estimated Tiner's speed at between fifteen and twenty miles per hour. Pictures of the accident scene show that the collision was head-on and that the patrol car front bumper hit the pole close to the center of the bumper.

The air bag in the patrol car did not deploy, and Tiner states that the seat belt also did not operate properly. After the collision, Tiner's chest hit the steering wheel, and her knees struck the underside of the dash board. Tiner then moved backward, and her head hit the police cage behind her.

Tiner and her husband, who makes a derivative claim for loss of consortium, commenced this action in New York State Supreme Court, Onondaga County, by service of a summons and complaint on GM on July 6, 1993. GM removed the action to federal court on July 13, 1993, based on the parties' diverse citizenship. Magistrate Judge Gustave J. Di Bianco's most recent scheduling order required that the parties disclose their expert witnesses by November 15, 1994, and complete all discovery by November 30, 1994.

On November 14, 1994, the Tiners served a response to GM's demand for witness disclosure indicating that they knew of no expert witnesses they intended to call. After the completion of discovery, GM moved for summary judgment dismissing all of the Tiners' claims. I heard oral argument on GM's motion on March 6, 1995.

## DISCUSSION

I first address the standards for deciding a summary judgment motion. Next, I examine the applicable substantive law and find that New York State law regarding "second collision" cases governs this diversity action. Finally, I address the merits of GM's summary judgment motion.

### I. Summary Judgment Principles

Summary judgment shall enter if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The materiality of facts must be determined with reference to the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). As to any issue on which the moving party does not have the burden of proof, the moving party may satisfy its burden by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554.

"If the movant satisfies the burden of establishing that there is no genuine issue of material fact, then the burden shifts to the nonmovant to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists." *Weg v. Macchiarola,* 995 F.2d 15, 18 (2d Cir.1993). In satisfying this burden, the non-moving party "may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The opponent of summary judgment "must

do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "[M]erely colorable" evidence will not suffice as a basis for opposing summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

In weighing a motion for summary judgment, the court must accept as true the non-moving party's evidence and make "all justifiable inferences" in the non-moving party's favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14. The evidentiary standard governing proof at trial determines how the court must assess the evidence in its summary judgment decision. *Id.* at 254–55, 106 S.Ct. at 2513–14. In an ordinary civil case such as this one, plaintiffs must prove their case by a preponderance of the evidence, and the determinative standard is "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512.

## II. Governing Substantive Law

 Because this is a diversity action, I must apply the substantive law of New York. *Caiazzo v. Volkswagenwerk, A.G.*, 647 F.2d 241, 243 (2d Cir.1981). In 1973, the New York State Court of Appeals extended a motor vehicle manufacturer's potential liability for design or construction defects to cases in which the plaintiff alleged that although the defect did not cause the accident, it enhanced or aggravated the plaintiff's injuries. *Bolm v. Triumph Corp.*, 33 N.Y.2d 151, 350 N.Y.S.2d 644, 649, 305 N.E.2d 769, 772 (1973). These cases, often referred to as "second collision" cases, include both situations in which the driver or passenger collides with an interior part of the vehicle after a collision with another vehicle or object and accidents in which the plaintiff is ejected from the car as a result of the initial collision. *Caiazzo*, 647 F.2d at 243 n. 2. The plaintiff in a second collision case must, as in all products liability cases, prove the existence of a design or manufacturing defect or the manufacturer's failure to provide adequate warnings. *Voss v. Black & Decker Mfg. Co.*,

59 N.Y.2d 102, 463 N.Y.S.2d 398, 401, 450 N.E.2d 204, 207 (1983). If the plaintiff relies on the design defect theory, then she also must show that an alternative safer design was feasible. *Caiazzo*, 647 F.2d at 250 (citing *Huddell v. Levin*, 537 F.2d 726, 737–38 (3d Cir.1976)); *Voss*, 463 N.Y.S.2d at 402; *Garcia v. Rivera*, 160 A.D.2d 274, 553 N.Y.S.2d 378, 380 (1st Dep't 1990), *appeal denied*, 77 N.Y.2d 801, 566 N.Y.S.2d 586, 567 N.E.2d 980 (1991); *Burgos v. Lutz*, 128 A.D.2d 496, 512 N.Y.S.2d 424, 425 (2d Dep't 1987). In addition, the second collision plaintiff has the burden of proving the extent of enhanced injuries attributable to the defect. *See Caiazzo*, 647 F.2d at 250; *Garcia*, 553 N.Y.S.2d at 380; *Held v. Ball*, 123 A.D.2d 507, 507 N.Y.S.2d 98, 100 (4th Dep't 1986); *Cornier v. Spagna*, 101 A.D.2d 141, 475 N.Y.S.2d 7, 11 (1st Dep't 1984). Evidence of enhanced injuries "will generally, perhaps even necessarily, be in the form of expert testimony." *Caiazzo*, 647 F.2d at 250.

 The Tiners argue that second collision or crashworthiness principles do not apply to their lawsuit because the cases cited by GM involved automobile parts "either designed for some purpose other than protection in a crash or requir[ing] some action on the part of the occupant to make [them] work." Pl.Br. at 8. The Tiners urge that "because the air bag system is a completely enclosed, independent, self contained, passive safety system built in and sealed by the manufacturer, requiring no maintenance, and designed only to activate in a crash strictly to prevent injuries," a new standard is required. *Id.* They would have this court require that "before a passive safety device designed solely to prevent injuries is placed in commerce it should first be adequately tested to determine under what minimal conditions it will function" and that the "results ... be made clear to the user," who then will "have a fair chance to take whatever other precautions are necessary." *Id.* at 10.[2] Plaintiffs' argument is fundamentally flawed. Courts apply the second collision doctrine to equipment designed solely to prevent injuries. *See Cornier*, 475 N.Y.S.2d at 10–11 (involving

---

2. Plaintiffs wholly failed to identify what additional precautions plaintiff might have taken had she known that the air bag would inflate only if she were traveling at a faster speed.

allegedly defective motorcycle helmet). More importantly, the second collision doctrine covers "defects in design which do not cause accidents but do enhance or aggravate injuries." *Bolm*, 350 N.Y.S.2d at 648. As noted previously "[t]he term 'second collision' usually refers to the collision between a passenger and an interior part of the vehicle following an impact or collision." *Caiazzo*, 647 F.2d at 243 n. 2. Tiner does not claim that a defect in a seat belt or air bag caused her accident; she claims only that her injuries were caused or enhanced by the failure of air bag and/or seat belt to function properly. Tiner also claims that various parts of her body hit interior parts of her vehicle after she drove into the light pole. Therefore, Tiner alleges a second collision within the meaning of *Caiazzo*.

## III. Tiner's Claims

Tiner alleges that the seat belt in her car was defective because it failed to prevent her from moving forward and that the air bag was defective because it did not deploy upon impact. GM urges that Tiner has not offered competent proof with respect to either alleged defect and that she should not be allowed to offer proof on the seat belt claim because she did not ensure the preservation of the seat belts as evidence.[3] GM also maintains that even if Tiner has shown proof of a defect in the air bag or seat belt, she has shown no proof of enhanced injury. I find that Tiner has offered no competent proof of a defect in the seat belt, and therefore do not reach the spoliation claim. I also find dispositive Tiner's failure to present any evidence that she suffered enhanced injuries because the air bag did not deploy.

### A. Seat Belt

■ Tiner's proof of a defect in the seat belt is confined to her own deposition testimony. She testified that the belt allowed her to move forward after the collision, so that her chest hit the steering wheel and her knees hit the underside of the dashboard. The belt also allowed her to move backward,

so that her head hit the police cage behind her. Tiner believes that these facts permit the jury to infer that the seat belt did not function properly. In response, GM urges that the workings of and commonly accepted standards for seat belt systems are beyond the ken of the ordinary juror and require expert testimony and that Tiner has failed to offer the expert proof necessary to create an issue of fact. GM offers the affidavit of its engineer, Gerry Bahling, who claims a specialized knowledge and expertise concerning both air bags and seat belts. Bahling states that because Tiner did not suffer a head injury and did receive upper torso bruising, the seat belt system functioned properly during the accident. Bahling Aff. ¶ 12.

■ A reasonable juror could not infer from Tiner's testimony about her movements after the collision that the seat belt suffered from either a design or manufacturing defect. "[C]ertain issues, because of their scientific or technical complexity, require the special expertise of an expert witness." *Food Pageant, Inc. v. Consolidated Edison Co.*, 54 N.Y.2d 167, 445 N.Y.S.2d 60, 62, 429 N.E.2d 738, 740 (1981) (citation omitted). Matters such as the tolerance a seat belt should allow for movement after a collision are not within the ken of the average juror. Moreover, it is likely that many factors besides the seat belt design and manufacture—issues such as maintenance, the proximity of the driver's seat to the steering wheel, and adjustments the driver made to seat belt settings—could explain the degree or direction of movement allowed to the driver. A jury may infer that a product has a defect without actual proof of the particular defect only if the plaintiff (1) establishes that the product did not perform as intended, and (2) excludes all other causes for the accident. *See Halloran v. Virginia Chem. Inc.*, 41 N.Y.2d 386, 393 N.Y.S.2d 341, 343, 361 N.E.2d 991 (1977); *See also Brandon v. Caterpillar Tractor Corp.*, 125 A.D.2d 625, 510 N.Y.S.2d 165, 167 (2d Dep't 1986). Tiner has not offered any proof that the seat

3. On February 13, 1992, plaintiffs obtained an order from Supreme Court, Onondaga County, requiring the dealership holding the accident vehicle to preserve its air bag sensors. Two days earlier the dealership had replaced the seat belts

as part of a recall. GM contends that based on these facts plaintiffs are guilty of spoliation. Plaintiffs respond that they are not responsible for the dealership's actions and that GM inspected the car prior to the seat belt replacement.

belt did not perform as intended. Nor has she offered proof excluding all other potential causes for any malfunction. Therefore, it would be improper to allow the jury to infer that the seat belt was defective.[4] Because Tiner has offered no competent proof of a defect in the seat belt, her claim on this issue must be dismissed.

## B. Air Bag

Although she does not clearly articulate the distinction, Tiner claims both that the air bag was defectively manufactured and that it was defectively designed.

With respect to manufacturing defect, Tiner notes first that GM claimed in its response to interrogatories that its air bag is designed to open at "those moderate to severe frontal impacts, roughly equivalent to striking a fixed barrier at zero degrees at a speed between 9 m.p.h. and 15 m.p.h. or striking a parked vehicle weighing about the same as the Tiners' car at a speed of approximately 18–24 m.p.h." Pl.Ex. F–1. Tiner also submits repair records for the accident vehicle that do not show any repairs to the air bag prior to the accident. Because the air bag is a self-contained system and because the air bag did not deploy when Tiner hit the pole at a speed between fifteen and twenty miles per hour, she suggests that a jury could find the air bag was defectively manufactured.[5]

■ GM's expert states that the Caprice's air bag is designed to deploy only when necessary to prevent serious or life-threatening injuries. Bahling Aff. ¶ 8. GM claims that the very fact that Tiner did not receive severe or life-threatening injuries in this crash establishes that the air bag functioned as intended. I disagree. Tiner's lack of serious injury is some proof that the air bag functioned as intended. However, the jury could infer that the air bag failed to work properly from Tiner's testimony that it failed to deploy when she hit the pole at a speed of twenty miles per hour and GM's claim that the air bag should deploy when a vehicle strikes a fixed barrier at a speed between nine and fifteen miles per hour. Tiner's proof is marginal. Her accident, in which the center front of her car struck a pole, may well not have been the functional equivalent of the situation envisioned in GM's interrogatory response, which appears to contemplate a full frontal impact. *Compare* Pl.Ex. F–1 *with* Pl.Ex. F–2. However, GM has not argued this distinction or submitted expert proof to indicate its relevance. Therefore, I assume for the purposes of this discussion that Tiner has submitted sufficient proof of an air bag manufacturing defect.

■ Tiner also argues that she offered proof that GM defectively designed the air bag by showing that a safer alternative design existed. She relies on an internal GM document that states: "The current mainstream design includes a center-mounted forward sensor high in the vehicle to address pole and bumper underride impacts." Pl.Ex. O. The Tiners claim in their brief that the sensors in the accident vehicle were located only under the headlights and that a sensor in the middle of the bumper would have caused the air bag to deploy. This argument lacks any reference to facts of record. GM's expert indicates that the two sensors in the accident vehicle cause deployment of the air bag under exactly the same diagnostic criteria as the three-sensor model discussed by plaintiffs. Bahling Supp.Aff. ¶ 10. There is therefore no competent proof in the record supporting plaintiffs' contention that a safer, feasible design for an air bag existed. Such proof is crucial to a design defect product

---

4. It is noteworthy that New York courts scrutinize the proof offered with respect to alleged design defects in second collision cases with particular care. *See e.g., Garcia,* 553 N.Y.S.2d at 380 (jury could not infer from plaintiff's injuries that ICC bar was defective); *Burgos,* 512 N.Y.S.2d at 425 (expert testimony that locking device on seat belt performed erratically after crash failed to establish that the design of the locking device caused the erratic performance); *Cornier,* 475 N.Y.S.2d at 10–11 (jury could not infer that motorcycle helmet was defective from the fact that it cracked upon impact and the plaintiff received brain injuries).

5. The Tiners also rely on the fact that the air bag sensors had to be replaced after the accident as evidence that the air bag should have deployed. This claim does not aid their case because they submit no expert testimony to show that destruction of the sensors is a criterion for air bag deployment. Moreover, no proof supports plaintiffs' claim that the sensors were replaced because they were destroyed.

liability case. *See Voss,* 463 N.Y.S.2d at 402. Therefore, the Tiner's claim that the air bag was defectively designed must be dismissed.

### C. Enhanced Injuries

■ Tiner failed to offer competent proof of a defect in the seat belt or of a design defect in the air bag. She offered some proof of a manufacturing defect in the air bag. However, her air bag claim also must be dismissed because she wholly failed to show her injuries were caused or enhanced by any defect in the air bag.[6] A manufacturer cannot be held liable for injuries in a second collision unless those injuries are greater than the "injuries which would result from an impact in a reasonably designed and constructed vehicle." *Bolm,* 350 N.Y.S.2d at 649. Moreover, plaintiff has the burden of showing the extent of the enhanced injuries. *Caiazzo,* 647 F.2d at 250.

Tiner urges that there is no need for her to demonstrate enhancement because all of her injuries were caused by the failure of the air bag and/or the seat belt. She relies on the nature of the injuries themselves, that is, injuries to her knees, face, chest, and back and claims that it is self-evident that she would not have received these injuries had the air bag functioned properly. GM, however, submits competent expert proof not only that the deployment of an air bag cannot prevent all personal injuries but also that the deployment itself often cause injuries. Bahling Supp.Aff. ¶¶ 7–8. Under these circumstances, it is particularly appropriate to require Tiner to prove that her injuries were worse because the air bag failed to deploy. *Id.*

■ Tiner also relies on results of tests GM performed on the air bag that showed (1) a 95 percent chance of air bag deployment when the car struck a fixed barrier at fourteen miles per hour; and (2) that "[t]he dummy face did not contact the wheel rim." Pl.Ex. F–3. Tiner suggests that these results demonstrate that the air bag would have protected her head and face from injury if it had deployed. However, because the results of the tests also show that the head of

the unbelted dummy "went over the wheel rim and loaded the topper pad of the I/P [instrument panel]," they do not prove that Tiner would not have received any injury had the air bag deployed. *Id.; see also* Bahling Supp.Aff. ¶ 9. Tiner therefore has presented no competent proof that her injuries were caused or enhanced by the alleged defect.

On a summary judgment motion, I must weigh the proof using the evidentiary standards to be applied at trial. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. Plaintiffs have the burden of proving by a preponderance of the evidence that defects in the air bag caused or enhanced Tiner's injuries. Because they have presented no competent proof on this issue, they have not met their burden and their air bag claim must be dismissed.

### CONCLUSION

GM's motion for summary judgment is granted, and plaintiffs' complaint is dismissed.

IT IS SO ORDERED.

---

**6.** Failure to show enhanced injuries would also support dismissal of the seat belt claim had Tiner

offered proof of a defect in the seat belt.