PEARL W. JOHNSON, as Administratrix of the Estate of JOHN T. JOHNSON, Deceased, Appellant, v OVAL PHARMACY, and EPIC SECURITY PROTECTION & INTELLIGENCE SYSTEMS, LIMITED, et al., Respondents.

First Department, April 23, 1991

## APPEARANCES OF COUNSEL

*Cheryl Eisberg Moin* of counsel *(Pamela Anagnos Liapakis* and *Marie Ng* with her on the brief; *Sullivan & Liapakis, P. C.,* attorneys), for appellant.

*Robert J. Ellsworth (Kornfeld, Rew, Newman & Ellsworth,* attorneys), for Oval Drug Corp., respondent.

*Joseph Frost* of counsel *(Frost & Berenholtz,* attorneys), for Georgino Borrero, respondent.

### OPINION OF THE COURT

KASSAL, J.

This lawsuit arises from a tragic incident in which a minor dispute between plaintiff's deceased, John T. Johnson, and defendant Georgino Borrero, a part-time armed security guard employed by defendant Epic Security Protection & Intelligence Systems, Limited (Epic Security), assigned to work at defendant Oval Pharmacy Drug Store (Oval Pharmacy), escalated into a confrontation that ultimately resulted in Johnson's death. Following a jury verdict in plaintiff's favor against Borrero and Oval Pharmacy, the trial court granted said defendants' motions to set aside the verdict pursuant to CPLR 4404, and dismissed the complaint. Upon examination of this record, we modify the court's ruling to the extent of reinstating the verdict with respect to defendant Borrero, and directing entry of judgment thereon against Borrero and defendant Epic Security.

As relevant to this appeal, the trial testimony established that at approximately 4:55 P.M. on May 8, 1982, Johnson, a 63-year-old retired narcotics detective, who was then employed by the Legal Aid Society as a supervisor of investigators, and who was licensed to carry a gun, entered Oval Pharmacy and, as required by the store, checked his shopping bag with defendant Borrero. A dispute arose when Johnson requested a receipt for the bag and was told by Borrero that he had run out of receipts, but that Johnson would have no trouble reclaiming his package because not many items had been checked. As this trivial matter quickly developed into a

heated argument, Johnson angrily demanded the return of his shopping bag, saying that he was not going to shop in the store any more and that he "ought to punch [Borrero] in the mouth". At this point, Borrero took out his night stick, prompting Johnson to draw his gun and direct the guard to put the stick away, while admonishing that he would not be treated "like a kid". Another store employee asked Johnson to put his gun away, and Johnson complied. He then left the store, shopping bag in hand and a pipe in his mouth.

The record further reveals that the pharmacist-president of Oval Pharmacy, Eli Krellenstein, attempted to prevent Borrero from following Johnson out of the store, but that the guard nevertheless did so, an act which he testified was for the purpose of looking for a police officer who had passed the store minutes earlier. Upon failing to see the officer, Borrero began to move in the direction of Johnson, who had crossed two traffic lanes of Metropolitan Avenue, on which the pharmacy was located, and was standing on its center island with his back toward Borrero. Johnson still carried his shopping bag and had a pipe in his mouth.

Calling out from the sidewalk, Borrero demanded to know whether Johnson was a police officer, but Johnson ignored him and continued to walk away. Borrero, however, persisted in his calls and Johnson ultimately turned around. According to Borrero's testimony, Johnson turned with an unholstered gun in his hand, causing Borrero to take cover behind a car, pull his own gun, and order Johnson to "freeze". This testimony conflicted with that of a nonparty witness, Roy Grundmann, who had been crossing Metropolitan Avenue in the same direction and at the same time as Johnson. Grundmann testified that he heard a voice yell "halt" and turned around to see Borrero standing with his gun drawn and pointed in his and Johnson's direction. Grundmann next heard Borrero call out, while still pointing his gun, "Are you a cop?", and observed Johnson remove his own gun, still in its holster, and move behind the other side of the parked vehicle from which Borrero was aiming his gun. When Grundmann turned to escape from what he correctly perceived to be a potentially dangerous situation, he heard a shot and turned back in time to observe Johnson falling on top of the parked car and sliding down onto the street. At no time had this witness ever seen Johnson with his gun outside of its holster.

Borrero's version of the shooting was that Johnson had continued to come toward him from the other side of the car

behind which he had taken cover, holding an unholstered gun in one hand and his shopping bag in the other. Borrero further testified that Johnson put his bag on top of the car and assumed a combat stance, holding the gun with both hands and pointing it at Borrero. It was then, the security guard testified, that he fired the fatal shot into Johnson's head.

The first police officer to arrive, Israel Larracuente, was about approximately one block from the scene when a passing motorist told him that he was needed. As Officer Larracuente was on his way, he heard the shot and, arriving within 20 seconds thereof, found Johnson lying face up between two parked cars with a gunshot would to the left side of his temple. Larracuente recovered Johnson's gun, which was holstered and contained five unspent rounds. The holster latch guarding the gun's hammer was closed and the muzzle of the gun was similarly secured within the holster.

The jury unanimously found in plaintiff's favor against defendants Borrero and Oval Pharmacy, apportioning liability at 60% against Borrero and 20% against Oval Pharmacy, and attributing 20% comparative negligence to the decedent. Although Epic Security was found negligent in its supervision and training of Borrero, the jury held this negligence not to be the proximate cause of Johnson's death. Damages were assessed in the sum of $160,000.

Following the verdict, defendants Borrero and Oval Pharmacy moved, pursuant to CPLR 4404, to set aside the verdict on the grounds that it was against the weight of the evidence and insufficient as a matter of law. This motion was granted by the trial court, which found that no negligence by these defendants had been established. Upon examination of this record, we modify to reinstate the jury's verdict as against defendant Borrero, and direct entry of judgment thereon against Borrero and his employer, defendant Epic Security.

At the outset, it should be noted that the factual determinations and principles of law applicable to the criminal prosecution of Georgino Borrero, which preceded this civil suit, are neither binding nor dispositive of the issues currently before this court. Borrero, who was indicted for manslaughter in the second degree and convicted, after a bench trial, of criminally negligent homicide, successfully appealed the judgment of conviction to this court, which predicated its reversal on the ground that "there [was] no reasonable view of the

evidence to support a finding that he was guilty of criminally negligent homicide". *(People v Borrero,* 118 AD2d 345, 351.)

In light of the lack of identity of parties in the two proceedings, neither issue preclusion nor collateral estoppel is applicable to the civil proceeding. Moreover, the criminal action, in which the State bore the burden of establishing beyond a reasonable doubt that Borrero had committed the crime of criminally negligent homicide, was necessarily subjected to an entirely different standard of proof than that applicable here. *(People v Kibbe,* 35 NY2d 407, 412; *Matter of Fox v United Bhd. of Carpenters & Joiners,* 33 AD2d 605, *lv denied* 25 NY2d 744.)* It is for this very reason that acquittal on criminal charges is inadmissible in a subsequent civil action. *(Massey v Meurer,* 25 AD2d 729.)

■ With respect to whether the jury's verdict was insufficient as a matter of law or against the weight of the evidence, we first note that it is well established that the evidence must be viewed in the light most favorable to the prevailing party. *(Ziecker v Town of Orchard Park,* 75 NY2d 761.)* Bearing this in mind, we have reviewed the record and conclude that the verdict determining that Borrero was negligent cannot be said to have been based upon legally insufficient evidence. Such a determination requires a finding that "there is simply no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial". *(Cohen v Hallmark Cards,* 45 NY2d 493, 499.)* That Borrero's testimony conflicted with that of nonparty witness Grundmann, merely raises an issue of credibility for the jury to resolve, and does not constitute a ground for dismissal of the complaint on grounds of legal insufficiency. *(See, Randolph v City of New York,* 69 NY2d 844, 847.)* Furthermore, a plaintiff is held to a lesser standard of proof in a wrongful death action, where the deceased is unavailable to recount his version of the events. *(Costalas v City of New York,* 143 AD2d 573, 575.)*

■ Nor does this record yield any support for the claim that there is no valid line of reasoning which could rationally lead a jury to conclude that Borrero was negligent. *(Cohen v Hallmark Cards, supra.)* Rather, the jury was entitled to conclude, from the evidence presented, that Borrero's act of following an armed man—and, specifically, one with whom he had just had a heated dispute—out into the street, was not consistent with the exercise of reasonable care. The jury was further entitled to accept, and interpret as evidence of negli-

gence, the testimony of eyewitness Grundmann, to the effect that Borrero called out to Johnson (who was walking away from the store and posing no threat to anyone) while holding a drawn gun. This undoubtedly caused Johnson, who turned and saw Borrero aiming the weapon at him, to take out his own gun. That the first arriving police officer found Johnson's gun still in its holster lends support to Grundmann's testimony that Borrero was the first to draw his weapon, and further supports a finding that Borrero prematurely resorted to deadly force. In short, the evidence amply supports the verdict—Borrero did not undertake his self-imposed duty of capturing an armed and potentially dangerous person in a manner consistent with a reasonable person's standard of care.

In this regard, we note that the trial court improperly substituted its own factual determination to supplant that of the jury in finding that it was Johnson who first drew a gun. *(See, Nicastro v Park,* 113 AD2d 129, 133.)

With respect to the setting aside of the verdict as against the weight of the evidence, a court may only exercise its discretion to do so where the verdict is " 'palpably wrong and it can be plainly seen that the preponderance is so great that the jury could not have reached [its] conclusion upon any fair interpretation of the evidence' ". *(Loughman v Flint Co.,* 132 AD2d 507, 508 [quoting *Cornier v Spagna,* 101 AD2d 141, 149].) As with the claim of legal insufficiency, this determination relies heavily upon the resolution of factual controversy. As such, the jury's fact-finding role must not be unnecessarily interfered with or usurped. *(Nicastro v Park, supra; Nazito v Holton,* 96 AD2d 550, 551.) For the very reasons noted with respect to defendants' claims of legal insufficiency, we hold that it was improper for the verdict to have been set aside as against the weight of the evidence.

■ Inasmuch as Epic Security, Borrero's employer, is vicariously liable for the guard's acts of negligence committed within the scope of his employment, we direct that judgment be entered as a matter of law against that defendant. In so doing, we note that it was undisputed that any negligence on the part of Borrero would be imputed to Epic Security as his employer and, indeed, the court so charged the jury. The record establishes that the court specifically acknowledged that counsel for Epic Security had conceded that Borrero was acting within the scope of his employment and that Epic Security was therefore vicariously liable for his negligence

under the doctrine of respondeat superior. *(See, Riviello v Waldron,* 47 NY2d 297, 302.) Of course, vicarious liability does not require that the employer foresee the precise act or manner in which the injury occurred, but only that the general type of conduct may reasonably have been expected. *(Young Bai Choi v D & D Novelties,* 157 AD2d 777, 778.)

However, we discern no negligence, vicarious or direct, on the part of Oval Pharmacy, which merely contracted with Epic Security for the assignment of an unspecified armed security guard to its store. This defendant was neither involved in Borrero's training nor aware of any deficiencies or behavioral problems in the part-time guard assigned by Epic Security. Moreover, the owner of Oval Pharmacy had attempted to restrain Borrero when he insisted on leaving the store in pursuit of Johnson. In light of all these circumstances, we conclude that Oval Pharmacy was not negligent and that the complaint as to this defendant was properly dismissed.

Accordingly, the order, Supreme Court, Bronx County (Philip C. Modesto, J.), entered July 12, 1989, which set aside the jury's verdict in favor of plaintiff and dismissed the complaint, should be modified, on the law and facts, to reinstate the verdict with respect to defendant Georgino Borrero and direct entry of judgment thereon against defendants Borrero and Epic Security, and otherwise affirmed, without costs.

SULLIVAN, J. P., ROSS and ASCH, JJ., concur.

Order, Supreme Court, Bronx County, entered on July 12, 1989, modified, on the law and facts, to reinstate the verdict with respect to defendant Georgino Borrero and direct entry of judgment thereon against defendants Borrero and Epic Security, and otherwise affirmed, without costs.