■ CHARLES KOWALSKI, Appellant, v JAMES YIANNOU, Respondent.—Judgment, Supreme Court, New York County (Joseph Harris, J.), entered March 21, 1991, which, after trial by jury in favor of the defendant, dismissed the complaint, reversed, on the law and the facts, without costs.

The plaintiff instituted this action to recover damages for injuries sustained as a result of the defendant's purported negligence on two separate occasions. At trial, the plaintiff, a twenty-five year employee of Pan Am, testified that he began seeing the defendant, a staff physician with Pan Am, in the spring of 1986 for treatment of penile warts. The plaintiff alleged that during the treatment on May 28, 1986, the defendant knocked over a vial of acid and that the acid spilled onto his testicles, penis and legs. He screamed in pain and saw his flesh bubble. According to the plaintiff, the defendant waited five to ten seconds before treating his burns. The plaintiff then returned to the waiting room and showed his girlfriend the burns. She took photographs of his injuries the next day. The plaintiff further alleged that when he returned to the defendant's office for further treatment of his warts on May 30, 1986, the defendant again spilled the acid. The burns later became infected.

At an examination before trial and at the trial itself, the defendant admitted spilling bichloracetic acid onto the plaintiff on May 28th, although he maintained that a much smaller amount spilled than that testified to by the plaintiff. The defendant described and demonstrated for the jury the treatment performed on the plaintiff by showing how he first painted the area around the lesion with vaseline to prevent the acid from touching healthy tissue and then how he placed the vial containing the acid between the plaintiff's legs on the examining table. He further emphasized the need to be very careful in applying the acid, but added that the vial just flipped over onto the plaintiff. His medical records contained the following notation: "[T]ube caught on orange stick * * * spill on thighs of about two cubic millimeters * * * Linear blanching of the left inner thigh plus or minus two centimeters * * * and five millimeters wide at the top * * * going down to one millimeter at the bottom." He then described the procedures he employed to treat the plaintiff's burns.

With regard to his treatment of the plaintiff on May 30th, the defendant testified that he applied Podophyllin, a substance which does not burn the skin, to the warts with a Q-tip. He did not recall spilling the Podophyllin on this date and his medical records do not contain any such notation.

In its negative response to the first interrogatory put to it by the court with respect to both occasions, the jury found that the defendant was not negligent on either May 28 or May 30, 1986. It therefore, in accord with the court's instructions, never went on to consider any issue of proximate cause or any issue concerning damages. The Supreme Court denied both the plaintiff's motion for a directed verdict and his motion to set aside the jury verdict.

Even assuming, as supposed by the dissent, that the jury rejected the plaintiff's testimony, it could not have reached its conclusion that the defendant was not negligent on May 28, 1986 upon any fair interpretation of the evidence (see, Johnson v Oval Pharmacy, 165 AD2d 587, lv denied 78 NY2d 859; Nicastro v Park, 113 AD2d 129). This follows, given the defendant's admission that he placed the vial of acid between the plaintiff's legs, spilled it on the plaintiff during the procedure, and then took measures to treat the burns, including the administration of an anesthetic. The medical records confirm these facts and actually describe the size and shape of the burns. The defendant's own notes establish that his acts were the proximate cause of the plaintiff's injury.

Unlike the plaintiff's allegations concerning the defendant's purported negligence on May 30th, there was no sharply conflicting evidence creating a factual dispute over what occurred on May 28th. Since the finding in favor of the defendant on the first cause of action lacked a rational basis and was without evidentiary support, the trial court should have set aside the verdict in favor of the defendant.

Accordingly, a new trial is ordered on the first cause of action alleging negligence by the defendant on May 28, 1986. Concur—Milonas, J. P., Rosenberger and Wallach, JJ.

Asch and Rubin, JJ., dissent in a memorandum by Asch, J., as follows: The plaintiff sought treatment for genital warts from the defendant doctor. He alleged and testified that on two occasions when he was treated for these warts the doctor spilled hydrochloric acid onto his groin area and inner thighs, resulting in severe burns and concomitant physical and psychological injuries.

Mr. Kowalski testified that on May 28, 1986, while he was

in a supine position with his legs apart on the examination table, the defendant filled a vial, seven to nine inches long and with the thickness of the size of a quarter, with the hydrochloric acid. While the defendant was removing the acid from the vial with a stick to place a drop on each wart he knocked the vial over and the acid spilled over the plaintiff's testicles, penis and legs. Plaintiff further asserted that although he was screaming in pain and watching his "flesh bubbling", the defendant did nothing for five to ten seconds, and then put a topical anesthetic, either lidocaine or novocaine on the burns. The next day, plaintiff saw his private physician who referred him to a dermatologist and defendant's girlfriend took photographs of the burns.

The following day, May 30, 1986, plaintiff returned to the defendant to complete the treatment for the wart removal and, he testified, the defendant utilized the same procedure and once more knocked over the vial of acid splattering the acid on plaintiff's groin and inner thighs.

Dr. Yiannou testified that he did not use hydrochloric acid, but in fact, bichloracetic acid, a mild acetic acid (which in its weakest form is called vinegar) to remove the venereal warts. The doctor testified that he applied vaseline first to protect the skin around the warts just in case any of the acid touched the healthy skin. The procedure then involved dipping the wooden stick into the small vial of acid which contained only about "three drops of the acid" which had been transferred to it from the bottle with a dropper. The doctor would then touch the wart with the stick which contained "not [even] a drop" but "a very small portion" of the acid until the wart began to turn white.

Dr. Yiannou testified that on May 28, 1986 he removed the stick from the vial, but that the wet stick stuck to the vial and flipped it onto its side and that the acid in the vial, "which will not hold much more" than "three drops" spilled on the patient. Defendant testified that he wiped it up "immediately" and applied an anesthetic ointment called Xylocaine.

The doctor testified that on May 30th he treated the plaintiff at Kennedy Airport with a substance known as Podophyllin, an organic substance which does not burn the skin at all. He applied this medication with a Q-tip and could not recall any spillage of it nor did his records indicate any such spillage on May 30.

The jury returned a verdict in favor of Dr. Yiannou, finding no negligence on his part, on either the May 28, 1986 treatment date or the May 30, 1986 date.

As this Court has previously noted:

"It is well settled that the resolution of conflicting evidence and the credibility of the witnesses is for the jury to determine. *(Boyle v Gretch,* 57 AD2d 1047, 1048.)

"The pertinent evidence adduced at trial consisted of conflicting testimony. A jury verdict in favor of a defendant will not be set aside unless the jurors could not have reached such a verdict on any fair interpretation of the evidence. *(Niewieroski v National Cleaning Contrs.,* 126 AD2d 424, 425, *lv denied* 70 NY2d 602.)" *(Malacow v Consolidated Rail Corp.,* 167 AD2d 123, 123-124, *lv denied* 77 NY2d 807, *cert denied* — US —, 112 S Ct 245.)

While the majority asserts that there was no factual dispute over what occurred on May 28, the brief recitation above of the conflicting testimonies shows that the defendant doctor, while admitting candidly that some of an acid spilled on the plaintiff, narrated an incident which bore no resemblance to the version told by the plaintiff.

Thus, while photographs were admitted which plaintiff and his girlfriend testified were taken May 29, the defendant testified unequivocally that they did *not* show the plaintiff's thighs and genitalia as they appeared after his treatment. Further, while plaintiff testified that his psychiatric injuries after the acid spill related solely to the burning, his cross-examination showed that plaintiff had made the same complaints throughout his life. In addition, plaintiff testified the burns he suffered from the spilling of the acid were severe and debilitating, but he conceded on cross-examination that he returned immediately to work after the second spill on May 30 and within a few days he flew to Brazil on a short vacation, and that he neither sought nor obtained medical treatment in the intervening period for those burns.

These evasions and apparent falsehoods could have led the jury to reject *all* the plaintiff's testimony, which it was entitled to do under the circumstances *(see, Petrovski v Fornes,* 125 AD2d 972, 973, *lv denied* 69 NY2d 608).

While the theory of the plaintiff's case was simple negligence based on the alleged spill on two occasions and *not* malpractice on the defendant doctor's part, the court charged the jury to evaluate Dr. Yiannou's conduct in light of his training and skills as a doctor, which, in effect, held the defendant to the higher standard of care applicable in medical malpractice actions. Thus, the jury found that the defendant acted in conformance with a higher standard of care than

plaintiff's proof warranted, since there was no expert testimony that defendant's actions deviated from good and accepted medical practice.

I note, parenthetically, that while the plaintiff brought this action in negligence, it more properly should have been brought as one in medical malpractice. "When the duty owing to a patient by a practitioner or medical facility arises from the physician-patient relationship or is substantially related to medical treatment, the breach thereof gives rise to an action sounding in medical malpractice as opposed to simple negligence *(see, Bleiler v Bodnar,* 65 NY2d 65)." *(Borrillo v Beekman Downtown Hosp.,* 146 AD2d 734, 735.) Phrasing it in an alternate manner, if the conduct plaintiff complains of can be "assessed on the basis of the common everyday experience of the trier of the facts", rather than involving "a matter of medical science or art requiring special skills not ordinarily possessed by lay persons", then an action will lie in simple negligence. *(Miller v Albany Med. Ctr. Hosp.,* 95 AD2d 977, 978.)* While, at first blush, a spill of acid would seem to be a matter that ordinary jurors could assess on the basis of their common everyday experience, the evidence accepted by the jury demonstrated that only a few drops of acid, at the most, spilled from the vial, and that this acid was not the corrosive hydrochloric acid postulated by plaintiff, but a milder acetic acid in the vinegar family. Also, the evidence accepted by the jury showed that the defendant took immediate corrective action and that prior to the application (and the spill), he had applied a coat of protective vaseline to the area. All these factors combined to require plaintiff to produce expert witnesses to help the jury determine whether the defendant acted properly, in his treatment. In any event, defendant did not challenge plaintiff's theory of simple negligence at the appropriate time.

Contrary to the conclusion reached by the majority, the jury was justified in reaching the verdict it did, as to the absence of negligence. As noted, the facts as presented to the jury differed dramatically according to the versions presented by the plaintiff and the defendant.

The fact that a minute quantity of acid spilled on plaintiff during the first treatment on May 28 was not conclusive proof of negligence. The jury was entitled to credit the defendant doctor's testimony and find the spill occurred even though the doctor exercised all reasonable care under the circumstances.

Accordingly, I would affirm the judgment appealed from *in toto.*