| |
|---|
| **Pianoforte v JZI Servs. LLC** |
| 2024 NY Slip Op 33409(U) |
| September 27, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 156971/2018 |
| Judge: Leticia M. Ramirez |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK  PART 29
-----------------------------------------------------------------X
ROBIN PIANOFORTE
                          PLAINTIFF
            VS                                                      INDEX # 156971/2018

JZI SERVICES LLC d/b/a SPA JOLIE and                **DECISION/ORDER**
"SPA JOLIE"                                                      (AMENDED)
                          DEFENDANTS
-----------------------------------------------------------------X

Defendant moves, pursuant to *CPLR§ 4404(a),* to set aside a jury verdict. At trial, the jury found the defendant liable for negligently performing laser hair removal. After trial, the jury awarded the plaintiff the sum of $160,000.00 for past pain and suffering with no award for future pain and suffering. Defendant argues*, inter alia,* that based upon allegedly incorrect evidentiary rulings, together with remarks made by plaintiff's counsel during summations, it is entitled to set aside the jury verdict. Defendant also claims the award was against the weight of the evidence and excessive, and therefore, defendant claims it is entitled to a new trial. Plaintiff opposes, arguing, *inter alia,* the award was not excessive, nor against the weight of the evidence and any remarks made by him during summations, were not improper, nor do they require a new trial.

In brief, this was a 5 day long personal injury jury trial, wherein plaintiff alleged she suffered burns during a laser hair removal treatment procedure. Plaintiff testified she complained to the technician that the laser apparatus was too hot. The procedure resulted in burns all over her arms and legs. Both parties had expert medical witnesses to testify to their respective positions. Both medical experts ultimately testified the injuries on plaintiff's skin were in fact burns. Defendant did not call as a witness the individual who plaintiff alleges caused the injury. After the trial was completed, the jury deliberated for 2 hours and 30 minutes and rendered a verdict which found defendant negligent. The jury decided that their negligence was a substantial factor in bringing about the injury and awarded the plaintiff the sum of $160,000.00 for past pain and suffering. There was no award for future pain and suffering.

1

In seeking to have the verdict set aside, defendant argues several statements made by plaintiff's counsel during his closing arguments warrants vacatur of the jury verdict. Defendant argues plaintiff's statement: "I submit to you, ladies, and gentlemen pain and again I hope this never happens to you, pain is a window to hell" was impermissible, highly prejudicial, and strictly forbidden. Defense counsel argues plaintiff counsel's additional statement, also made during summations, "we've had discussions about what we think the case is worth", also requires the court set aside the jury verdict as plaintiff's statement is improper, highly prejudicial and grounds for a mistrial.

Defense counsel further argues this Court erred in allowing plaintiff to testify that she felt "shocks going up and down her body". Counsel argues the use of the word, "shocks" was in direct violation of the court decision on a *motion in limine*. The ruling on the motion required plaintiff to abstain from providing any testimony concerning neurological complaints. Plaintiff's expert was also precluded from testifying to any neurological injury as they were not included in the Bill of Particulars. Counsel argues, the use of the term "shocks" by the plaintiff violated the Court's ruling, was highly prejudicial, and a basis to set aside the jury verdict. The defendant also seeks to have the jury verdict vacated based on the Court's failure to allow the introduction into evidence, of an affidavit authored by the plaintiff on an unrelated Federal matter.

Defense counsel also argues the jury verdict should be set aside as the award of $160,000.00 for past pain and suffering was excessive. However, counsel does not cite any past jury verdict to illustrate the alleged excessiveness. Instead, counsel simply argues it is excessive and against the weight of the evidence, with no support. Lastly, defendant requests, should the Court fail to grant it's motion to vacate the jury verdict, the Court should order plaintiff to agree to reduce the judgment substantially. Defendant, however, does not suggest what a "substantial" amount would be.

In opposition, plaintiff alleges defendant's motion must be denied in its entirety as defendant has failed to append a copy of the transcript to the motion. Plaintiff counsel also opposes defendant's allegations it made improper reference to settlement negotiations.

Plaintiff alleges he did no such thing, but rather, the statement "we've had discussions about what we think the case is worth" was in response to defendant counsel's remarks during

2

[* 2]

summation. Defense counsel, during his summations, told the jury that plaintiff's counsel was going to ask for a lot of money for these injuries, " maybe even as much as $150,000.00". Plaintiff's counsel alleges defendant did this, all the while knowing plaintiff's counsel would be seeking much more. Plaintiff argues counsel was using this defense tactic to lessen plaintiff's right to request damages that were borne from the evidence. Plaintiff also argues the statement made by him during summations, to wit: "I submit to you ladies and gentlemen, pain and again, I hope this never happens to you, pain is a window to hell" was not improper, prejudicial nor a basis to set aside the jury verdict.

In opposing defendant's allegation of allowing the plaintiff to testify to "shocks", which was disallowed by the court's ruling on the *motion in limine*, plaintiff counsel argues, defendant's remedy, if it had an issue with the decision, was to move for reargument, and not raise the issue in a motion pursuant to *CPLR§ 4404*.

Plaintiff argues the verdict is not excessive, nor against the weight of the evidence and in support, cites a case where a plaintiff received much higher damages for the same injury. Lastly, plaintiff's counsel alleges defense counsel is simply attempting to re-litigate the entire trial.

In reply, defendant argues plaintiff's opposition concerning its failure to attach copies of the transcript is without merit since the court is already in possession of the transcripts. The remainder of defendant's reply is simply a repeated recitation of the issues raised in the moving papers.

It is well settled that a jury verdict shall not be set aside and shall stand unless the court concludes that the jury could not have reached the verdict on any fair interpretation of the evidence. *Delgado v. Board of Education of Union Free School District*, 48 N.Y.2d 643 (1979). In fact, a jury verdict should not be set aside unless the court concludes that the evidence presented at trial so preponderates in favor of the moving party that the jury could not have reached its verdict on any fair interpretation of the evidence. *Grassi v. Ulrich*, 87 N.Y.2d 954 (1996). Moreover, vacatur of a verdict based on a claim of insufficiency as a matter of law requires that the trial court determine that the jury verdict is "utterly irrational *Killon v. Parrotta*, 28 NY3d 101, 108 [2016]*, quoting, *Campbell v. City of Elmira*, 84 NY2d 505 [1994].

A determination that a verdict was based on legally insufficient evidence "requires a finding that 'there is simply no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence

3

[* 3]

presented at trial' *Johnson v. Oval Pharmacy*, 165 A.D.2d 587, 592, 569 N.Y.S.2d 49 [1991], lv. denied 78 N.Y.2d 859, 575 N.Y.S.2d 455, 580 N.E.2d 1058 [1991], quoting, *Cohen v. Hallmark Cards*, 45 N.Y.2d 493, 499, 410 N.Y.S.2d 282, 382 N.E.2d 1145 [1978]).  A verdict should only be set aside as against the weight of the evidence where it is palpably wrong and the jury could not have reached its conclusion upon any fair interpretation of the evidence. _See,_ *Bernstein v. Red Apple Supermarkets*, 227 A.D.2d 264, 265, 642 N.Y.S.2d 303 [1996], lv. dismissed 89 N.Y.2d 961, 655 N.Y.S.2d 881, 678 N.E.2d 493 [1997], _citing_, *Cornier v. Spagna*, 101 A.D.2d 141, 149, 475 N.Y.S.2d 7 [1984] ). These standards of review result from the deference owed to the fact-finding powers of a jury within our justice system.

Based upon a review of the papers submitted and the relevant case law, the Court finds plaintiff's commentary during summation, "I submit to you, ladies, and gentlemen-pain and again I hope this never happens to you, pain is a window to hell"  not improper, nor highly prejudicial and clearly not a basis to set aside the verdict. Defense counsel's reliance on the cases cited in its moving papers, do not support its contentions. *In Boshnakov v Bd. of Education*, 277 AD2d 996. [4th Dept, 2000], the court rejected the allegation that statements made by counsel during summations were unduly prejudicial. The court concluded the so-called "bag of gold" remarks was fair comment in response to remarks by defense counsel.  The court held that counsel *did not* tell jurors, either directly or by implication, that they should put themselves in plaintiff's place and render such verdict as they would wish to receive were they in plaintiff's position.  Defense counsel also relies on *Liosi v Vacarro*, 35 AD2d 790 [1st Dept 1970] and *Wintraub v Zabotinsky*, 19 AD2d 906 [ 2nd Dept 1963].  Neither of these cases supports the contention of improper statements made by counsel during summations.

In *Liosi*, the Court, in its jury charge, charged the jurors to ask, "each of himself, what he would want or what he would take for the discomfort, pain and suffering experienced" In that case, the Appellate Division found this was clearly error and relied on *Weintraub* _supra,_ which stands for the proposition that this type of directive by the court is highly prejudicial.  In *Weintraub*, it was once again the court who charged the jury to compensate the plaintiff for his injury "in such amounts as you jurors feel you, yourselves, would like to be compensated if the conditions happened to you the same as happened to this man". Here, the appeals court once again reversed, finding the charge to be reversible error.  In the instant matter, the court never included the language in its charge, therefore, defense counsel's reliance on both *Liosi* and

4

*Weintraub* is woefully misplaced. Like *Boshnakov*, this Court finds remarks made by plaintiff's counsel were not unduly prejudicial and do not warrant a new trial. *See also*, *Young v Tops Mkts*, 283 AD2d 923 [4th Dept, 2001], where the Court found counsel's statement made during summation, "may seem like a lot of money, but I don't know of anybody [who] would take that money and say give me what ***[plaintiff] has gone through and what he will go through", not so egregious as to warrant setting aside the verdict for that reason.

Defense counsel's allegation concerning the statement made by plaintiff's counsel during summation, "we've had discussions about what we think the case is worth" was not, as defense counsel alleges, in violation of *CPLR§ 4547*. That statute prohibits, *inter alia*, mention of settlement negotiations, compromise of an action, or offers to settle. In addition, the statute prohibits evidence of any conduct or statement made during compromise negotiations. Plaintiff's statement did none of these things. Moreover, when the comment was made, defense counsel failed to raise an objection and chose instead to interrupt counsel's summation by blurting out to the jury "I never had a discussion". In any event, plaintiff's statement was not improper nor prejudicial and does not serve as a basis for vacatur of the jury verdict.

Defense counsel's allegation, that the Court failed to strike that portion of plaintiff's testimony, that she felt "shocks" when this Court had specifically precluded any testimony concerning neurological damage pursuant to a *motion in limine*, was harmless error. There was no further mention of any neurological issues, nor evidence permitted as to claims of neurological injury. This Court finds that use of the word, "shocks" without more, did not prejudice defendant. *See, CPLR 2002*.

In addition, counsel's allegation, that the Court did not admit into evidence an unsworn affidavit, which was in support of a matter plaintiff had commenced in Federal Court, is without merit as the Court marked it as a court exhibit, and allowed defendant to cross-examine the plaintiff, at great length, as to the complaints made by plaintiff in the federal matter. Defendant used the document to attempt to impeach plaintiff's credibility, so defendant cannot now say he was prejudiced. Similarly, defendant's allegation, that the court refused to admit into evidence a document evidencing plaintiff's informed consent was ameliorated by defense counsel's motion to strike the claim of lack of informed consent, which was granted without opposition. Moreover, the document was introduced for the first time, after plaintiff's counsel had rested, which goes against the tenets of good faith.

5

[* 5]

Lastly, when moving to vacate an award as excessive, it is common practice for counsel to submit cases, with similar injuries, which resulted in lower awards to support the claim of excessiveness. Here, defendant did no such thing. Defendant simply argues it is excessive without any basis, comparison, or proof. Defendant argues plaintiff is not entitled to anything; however, he fails to substantiate the basis for such argument. Counsel's allegation, that plaintiff only missed two days of work, is irrelevant, as there was no claim for lost earnings. To counter the argument that the verdict was excessive, plaintiff's counsel relies on *Salas v Bellair Ctr., Inc*, 185 AD3d 746 [2nd Dept., 2020], a case very similar to the instant matter, where plaintiff suffered burns, discoloration, and discomfort after laser treatment. The jury awarded in that matter $255,525.00. The Court holding that "affording the plaintiff the benefit of every inference that may properly be found from the evidence presented and considering the evidence in a light most favorable to her, *see, Morgan-Word v New York City Dept. of Educ.*, 161 AD3d at 1068), the jury verdict finding that the defendant negligently performed the cosmetic laser treatment at issue, and that its negligence proximately caused the plaintiff's injuries, was not utterly irrational." Here, the Court agrees.

In the instant matter, the jury had a basis to award the plaintiff $160,000.00 for past pain and suffering. They heard extensive testimony concerning plaintiff's procedure and the ensuing pain she experienced. Concerning her reaction during her procedure, she testified about addressing the technician, "It feels like you're burning my skin, and it feels too hot" "It's hurting" (pg. 62 lines 12-14). She testified she spoke to defendant's expert ".... I mentioned to Dr. Diktaban that she had given me this silver cream; he knew right away what the term silver cream means. Silver is short for Silvadene, and it treats burn victims" (pg. 72, lines 22-25). She testified as to how the pain affected her, "Sleeping was difficult because the burns all over the legs, so in a laying position, it's very hard to lay on top of burns and sleep. So, I didn't sleep for weeks at a time....) (pg. lines 5-7). She testified how the injury affected her life "I'm very outdoors, so I enjoy running...I like to walk the Highline. I like to play tennis and these are all outdoor events when you're in the sun and you do wear shorts for the majority of the year when you are running or playing tennis, so I entirely stopped doing everything that I loved.....I didn't want to expose my legs further to any sort of light, do any further harm than what had already been done to my body" (pgs. 81-82 lines 20-25 and 1-3). When plaintiff was asked whether the

6

[* 6]

burns were painful after the treatment, plaintiff testified they were "excruciatingly painful. I couldn't sleep at night because it was so uncomfortable to sleep..." (pg. 400-401 lines 24-2).

There was testimony elicited from both plaintiff and defendant's experts agreeing that the resulting marks over the entirety of the treated area were in fact burns. Plaintiff's expert, Dr. Cohen, testified the injuries plaintiff suffered is a burn (pg. 125 line 22-24) he describes plaintiff's injuries as "red welts" upon review of photographs of plaintiff's injuries, he testified, "....... But she has these large, red welts. She has multiple areas that are scabs or crusting and multiple blister's all over those legs over there" (pg. 127 lines 16-18) When asked what was inside the red welts, Dr Cohen stated "so there's fluid, different tissues cells, there might be blood in there. It's all part of healing. When you get a burn, .... you get swelling and fluid, and it goes through a healing process basically and each one is an individual burn" (pg. 129 line 8-12). He further opined, "This happens to be-in my opinion, to be a second-degree burn...." (pg. 131 line 23). When asked whether he had an opinion, to a reasonable degree of medical certainty whether the injuries that were found during his examination, and contained in the records are causally connected to the laser hair removal treatment in 2017, he answered yes, and continued with "My opinion within a reasonable degree of medical certainty, is that the laser that was done in July 2017 caused the burns on the skin, on the arms the torso, the legs..." ( pg. 144 lines 9-12).

Defendant's own expert Dr. Diktaban, who testified that he did not agree that burns were "second degree" testified on direct examination that the injuries plaintiff suffered were first degree burns. (pg. 308 lines 12-17). During cross-examination however, when asked whether the burns were causally connected to the laser hair removal treatment of July 6, 2017, the defense expert answered "yes" (pg. 345 line 18-22). When counsel for plaintiff describes plaintiff's complaints and asks, "does oozing, pink coloration, raised skin eruptions, an intense swelling involving yellowish fluid sound like first degree burns to you?" Dr. Diktaban answers: "that description, by itself is more than a first-degree burn" when counsel asks "Pink and red burns eventually become hyperpigmented, right? That's what she told you? The doctor answered "yes" and when counsel concluded the inquiry with "And that's what the evidence shows, doesn't it?" Dr. Diktaban answers "it does" (pg. 376-377 lines 19-11). Dr. Diktaban also testified that he told defense counsel that plaintiff's injuries were burns (pg. 357 lines 2-7).

7

Over the course of 5 days, the jury heard medical testimony, plaintiff's testimony, the testimony of plaintiff's mother, testimony from the owner of the Spa, and testimony from the receptionist. However, the jurors never heard from the individual who performed the laser hair removal treatment. Furthermore, the jury saw graphic photos of the injury. Whether they accepted all or rejected some of the testimony, this Court finds there was sufficient basis for the jury to find for plaintiff. They heard the facts, and decided plaintiff was entitled to compensation. Based on the totality of the evidence and testimony presented, this Court finds the jury award was not excessive, nor against the weight of the evidence. The jury had a rational basis to award such an amount and this Court will not upset the jury's verdict.

Accordingly, the motion to set aside the jury verdict is denied in its entirety. Defendant's remaining contentions are found to be without merit.

This constitutes the Decision and Order of this Court.

Dated: September 27, 2024

Hon. Leticia M. Ramirez

Justice of the Supreme Court

8