■ PHYLLIS M. ZITO, Respondent-Appellant, v 241 CHURCH STREET CORP. et al., Appellants-Respondents and Third-Party Plaintiffs-Appellants. CITY OF NEW YORK HUMAN RESOURCES ADMINISTRATION, Third-Party Defendant-Respondent. [636 NYS2d 40] —Judgment of the Supreme Court, New York County (Edward A. Rath, J.), entered July 1, 1994, which granted third-party defendant City of New York's motion to set aside the verdict against it as contrary to the weight of the evidence and which granted defendants' motion to reduce the jury verdict from $805,976 to $423,677.54, unanimously modified, on the law and the facts, (1) to the extent of denying the third-party defendant's motion and reinstating the jury verdict against the City of New York and, (2) directing a new trial on the issue of damages only and, except as so modified, affirmed unless, within 20 days after service of this order, plaintiff shall serve and file, in the office of the Clerk of the Supreme Court, a stipulation consenting to reduce the jury's total verdict from $423,677.54 to $250,000, and to entry of an amended judgment in accordance therewith, in which event the judgment, as modified and reduced, is affirmed, without costs.

Plaintiff Phyllis Zito commenced this action against defendants 241 Church Street Corp. and Sylvan Lawrence Co. for personal injuries. At the time of the accident, Ms. Zito was employed by third-party defendant, New York City Human Resources Administration. On September 10, 1989, Ms. Zito was working in her office on the tenth floor of a building owned by defendant 241 Church Street Corp. and managed by defendant Sylvan Lawrence Co. The wheel of the chair in which plaintiff was sitting became caught in a hole or depression in the floor, causing the chair to tip over. Ms. Zito hit her head against a column in her office, allegedly causing permanent injuries to her back, recurring headaches, anxiety attacks, and depression.

The complaint alleges that the accident resulted, *inter alia*, from defendants' negligence in failing to inspect, repair, and maintain the floor of the office. Plaintiff's bill of particulars alleges that defendants had actual and constructive notice of the defect as they, or their agents, were on the premises and knew, or should have known, of the defect. Defendants brought a third-party action claiming indemnification from the City and denying any responsibility for the accident. Defendants assert that either plaintiff negligently caused her own injuries or that the City negligently caused plaintiff's injuries by failing to repair the defect. Defendants' bill of particulars alleges that the City failed to notify them of the defective condition of the floor, failed to make repairs, and breached the lease.

In its third-party answer, the City denied any obligation to indemnify defendants. At trial, the City took the position that the lease imposes no obligation to maintain or repair the premises or to notify defendants of any defects in the condition of the leased premises. The jury, however, in a bifurcated trial, returned a verdict on liability, holding defendants 40% negligent, the City 55% negligent, and plaintiff 5% negligent.

Supreme Court granted a motion by the City to set aside the jury verdict and dismissed the complaint against it. The court reduced the amount of the verdict against defendants from $805,976 ($720,000 after the deduction for plaintiff's apportionment of damages) to $423,677.54 ($360,000 after apportionment) and denied their motion for a new trial. Defendants appeal from that portion of Supreme Court's judgment which set aside the jury verdict and dismissed the third-party complaint. Plaintiff cross-appeals from that portion of the judgment which reduced the jury verdict.

The basis for dismissal of the third-party complaint is stated in the transcript as the failure to adduce sufficient evidence to

support the allegations contained therein, as amplified by the bill of particulars. The court expressly noted that no duty is imposed upon the City by the terms of the lease to notify defendants of the need for repairs.

Defendant 241 Church Street Corp.'s bill of particulars avers that "third party defendant breached its lease duty, failed to notify defendant of any housekeeping or maintenance defect; and/or improperly cleaned and maintained portions of premises it leased from defendant." Thus, the City was put on notice of claims for failure to notify, failure to repair, and breach of lease (*see, DiMauro v Metropolitan Suburban Bus Auth.*, 105 AD2d 236, 239-240).

The City's grounds for dismissal of the third-party complaint are based upon the terms of its lease with defendants. The City argues that the reservation of the right to make repairs "at the landlord's expense, if the landlord failed in its duty to make repairs, did not rise to the level of a contractual duty to repair." However, quite apart from its responsibilities under the lease, the City has a common-law duty to remove dangerous defects from its premises if the defects are of such character or duration that a jury could reasonably conclude that due care would have uncovered them (*Putnam v Stout*, 38 NY2d 607, 612). The tenant, like the landlord, has a common-law duty to keep the premises in reasonably safe condition (*McNelis v Doubleday Sports*, 191 AD2d 619, 620), independent of any obligation which might be imposed upon the landlord by the lease (*Zuckerman v State of New York*, 209 AD2d 510, 511-512; *Chadis v Grand Union Co.*, 158 AD2d 443, 444). Moreover, the lease does not completely divest the City of control over or responsibility for repairs and maintenance (*see, Guzman v Haven Plaza Hous. Dev. Fund Co.*, 69 NY2d 559, 569; *Putnam v Stout, supra*, at 613).

Plaintiff testified that she reported the defect in the floor to both her employer and a person whom she believed worked for the building's management company. Therefore, upon a fair interpretation of the evidence, the jury could have concluded that both defendants and the City were negligent in permitting a defect to remain in the floor which was a substantial and proximate cause of plaintiff's injury (*see, Gentile v Ongsiako*, 180 AD2d 424, 425). While conflicting testimony was received concerning notice of the defect and plaintiff's asserted impairment due to the influence of Valium, the resolution of disputed facts is within the province of the jury (*Windisch v Weiman*, 161 AD2d 433, 437), and the record on appeal presents no reason to disturb the verdict (*Walters v Castle Vil.*

*Owners,* 166 AD2d 316; *Loughman v Flint Co.,* 132 AD2d 507, 510, *lv denied* 70 NY2d 613; *Cornier v Spagna,* 101 AD2d 141, 149).

As to the amount awarded as damages for plaintiff's injuries, we note that Ms. Zito was 39 years old at the time of the accident, with a life expectancy of 34 years. She had a prior history of mental illness, including severe depression and anxiety attacks. Plaintiff admitted that, due to job-related stress, she had been taking Valium for the past two months and had taken the medication on the day of the accident. Plaintiff's treating physician, who appeared as her neurological and psychiatric expert, testified that her spine shows only mild or minimal degenerative changes consistent with her age, but there is no evidence of pathology of the cervical spine, nerve damage, sensory abnormalities, neck damage, or brain trauma. Likewise, defendants' radiological expert testified that plaintiff suffers from minimal to mild degenerative changes in her lower back, but that no abnormal curvature or straightening is present.

We agree with Supreme Court's conclusion that the jury's award of $805,976 is excessive. However, in light of plaintiff's age, comparatively minor injuries and pre-accident psychological problems, we find that the reduced award of $360,000 "deviates materially from what would be reasonable compensation" (CPLR 5501 [c]) and is thus excessive to the extent indicated (*see, Merrill v Albany Med. Ctr. Hosp.,* 126 AD2d 66, *appeal dismissed* 71 NY2d 990). Concur—Sullivan, J. P., Wallach, Rubin, Ross and Nardelli, JJ.