Wiesner v Schick's Take Home Foods Inc. (2025 NY Slip Op 50395(U))

[*1]

Wiesner v Schick's Take Home Foods Inc.

2025 NY Slip Op 50395(U)

Decided on March 31, 2025

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 31, 2025
Supreme Court, Kings County

Roslyn Wiesner, Plaintiff,

against
Schick's Take Home Foods Inc. D/B/A Schick's Manor, Defendant.

Index No. 527869/2022

Margulies and Associates, Rockville Centre (Robert Margulies of counsel) for plaintiff.
Gokhulsingh, Accardy & Rosenfarb, New York City (Lisa L. Gokhulsingh of counsel), for defendant.

Aaron D. Maslow, J.

The following numbered papers were used on this motion:
Submitted by Defendant in Support
NYSCEF Document Numbers 30-46, 51 (notice of motion, affirmation, exhibits, memorandum of law, additional papers)
Submitted by Plaintiff in Opposition
NYSCEF Document Numbers 52-63 (affirmation, exhibits, memorandum of law, additional papers)
Submitted by Defendant in Reply
NYSCEF Document Numbers 64-67 (affirmation, memorandum of law, additional papers)
Upon the foregoing papers, having heard oral argument, and due deliberation having been had, the within motion is determined as follows.
Plaintiff Roslyn Wiesner (Plaintiff) alleges that on April 9, 2022, while attending a Shabbat event in the catering establishment operated by Defendant Schick's Take Home Foods Inc. d/b/a Schick's Manor (Defendant), she tripped over a single-step riser while egressing from a coat room back into the hallway in the basement of the building where Defendant operated its business, sustaining personal injuries from the ensuing fall to the floor. The coat room level was higher than the hallway level. Defendant now moves for summary judgment dismissing Plaintiff's complaint.
A significant issue herein concerns the applicability of Building Code § 27-371 (h), which provides: "Floor level. The floor on both sides of all exit and corridor doors shall be essentially level and at the same elevation for a distance, perpendicular to the door opening, at least equal to the width of the door leaf, except that where doors lead out of a building the floor level inside may be seven and one-half inches higher than the level outside."
Defendant proffers various contentions:
• The subject coat room doorway, flooring, and the step were not subject to the New York City Building Code.
• The condition which caused the fall was open and obvious and not inherently dangerous.
• The brown carpeted floor inside the coat room and the white-tiled floor in the hallway outside the coat room provided sufficient visual contrast.
• The condition was not inherently dangerous because there were, allegedly, no prior complaints and no prior accidents.
Summary judgment is a drastic remedy that should be granted only if no triable issues of fact exist and the movant is entitled to judgment as a matter of law (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; Andre v Pomeroy, 35 NY2d 361, 364 [1974]). The party moving for summary judgment must present a prima facie case of entitlement to judgment as a matter of law, tendering sufficient evidence in admissible form demonstrating the absence of material issues of fact, and the failure to make such a showing requires denial of the motion, regardless of the sufficiency of the opposing papers (see CPLR 3212 [b]; Smalls v AJI Industries, Inc., 10 NY3d 733 [2008]; Alvarez, 68 NY2d at 324; Winegrad, 64 NY2d at 853). Once a prima facie showing has been made, however, the burden shifts to the nonmoving party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact that require a trial for resolution or tender an acceptable excuse for the failure to do so; mere expressions of hope are insufficient to raise a genuine issue of fact (see Zuckerman v City of New York, 49 NY2d 557, 560 [1980]). If there is any doubt as to the existence of a triable issue of fact, the motion for summary judgment must be denied (see Rotuba Extruders, Inc. v Ceppos, 46 NY2d 223, 231 [1978]). On a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party (see Bazdaric v Almah Partners LLC, 41 NY3d 310, 314 [2024]).
A property owner or tenant in possession has a duty to maintain its property in a reasonably safe condition (see Fishelson v Kramer Props., LLC, 133 AD3d 706, 707 [2d Dept 2015]; Surujnaraine v Valley Stream Cent. High School Dist., 88 AD3d 866, 866 [2d Dept 2011], quoting Katz v Westchester County Healthcare Corp., 82 AD3d 712, 713 [2d Dept 2011]), and must warn of any dangerous or defective condition of which it has actual or constructive notice (see Gordon v American Museum of Natural History, 67 NY2d 836 [1986]; Fishelson, 133 AD3d at 707).
However, a property owner has no duty to protect or warn against an open and obvious condition, which as a matter of law is not inherently dangerous (Fishelson, 133 AD3d at 707; Surujnaraine, 88 AD3d at 866; Katz, 82 AD3d at 713). "Whether a hazard is open and obvious cannot be divorced from the surrounding circumstances. A condition that is ordinarily apparent to a person making reasonable use of his or her senses may be rendered a trap for the unwary where the condition is obscured or the plaintiff is distracted [citations omitted]." (Katz, 82 [*2]AD3d at 713.) A court may determine whether a condition is hazardous and open and obvious as a matter of law when the established facts compel that conclusion, and may do so on the basis of clear and undisputed evidence (see Tagle v Jakob, 97 NY2d 165, 169 [2001]; Fishelson, 133 AD3d at 707).
Whether a dangerous or defective condition exists on the property of another so as to create liability depends on the peculiar facts and circumstances of each case and is generally a question of fact for the jury (see Surujnaraine, 88 AD3d at 867, quoting Trincere v County of Suffolk, 90 NY2d 976, 977 [1997]).
A person unfamiliar with the premises might not reasonably perceive the existence of a change in elevation where a single-step riser exists, as there might be "optical confusion" (see Roros v Oliva, 54 AD3d 398 [2d Dept 2008]; Scher v Stropoli, 7 AD3d 777 [2d Dept 2004]).
Plaintiff relies, in part, on New York City Building Code § 27-371 (h), quoted supra at 1. In fact, Defendant included Plaintiff's expert report of Scott Silberman, P.E., in its motion papers. Mr. Silberman's report opined, in part, that Building Code § 27-371 (h) governed the location where Plaintiff tripped — the demarcation point between the higher-level coat room and the lower-level hallway — and that the doorway was noncompliant with, and violative of, the said Code provision. While Defendant's counsel argued that the said Code provision was not applicable to the location, no expert opinion was submitted by Defendant to that effect (cf. Capio v U.S. Bank N.A., 234 AD3d 919 [2d Dept 2025] [briefs mention defendant's expert]; Coppola v Cure of Ars R.C. Church, 119 AD3d 726 [2d Dept 2014] [briefs mention defendant's expert]). The affidavit of Stan Pitera, P.E., submitted by Defendant, did not attest that Defendant's single-step riser conformed to Building Code § 27-371 (h); he did not discuss its applicability.
Where a plaintiff relies on Building Code provisions in support of its negligence claim, it is the burden of the defendant to establish prima facie that they "were inapplicable and that an alleged violation of those provisions did not proximately cause the plaintiff to fall" (Wechsler v Ave. L, LLC, 234 AD3d 895, 897 [2d Dept 2025]).
Defendant's counsel argued the inapplicability of § 27-371 (h). Counsel cited to McLaughlin v Ann-Gur Realty Corp. (107 AD3d 469 [1st Dept 2013]) for the proposition that as a commercial tenant, Defendant could not be held liable for Building Code violations. In that case, however, § 27-371 (h) was not at issue. In contrast, in Elbaddawi v Myrna & Mark Pizzeria, Inc. (70 AD3d 627, 628 [2d Dept 2010]), it was held that "triable issues exist as to violations of Administrative Code § 27-371 (h) . . . which may serve as a predicate for liability" by the defendant commercial tenant. Similarly, in LaPadula v J.A.A. Grocery Corp. (37 AD3d 237 [1st Dept 2007]), the Court applied § 27-371 (h)'s seven-inch provision to a commercial tenant. An out-of-possession landlord which retained the right to re-enter the premises and repair the area at issue was not entitled to summary judgment dismissing the plaintiff's complaint, where it failed to establish that § 27-371 (h) was not violated; this applied to the tenant also (see Denermark v 2857 W. 8th St. Assoc., 111 AD3d 660 [2d Dept 2013]).
In moving and reply affirmations and accompanying memoranda of law, Defendant's counsel herself argued strenuously that § 27-371 (h) did not apply to the particular location in the basement. Much focus was on the wording of the Code provision and the contentions that the hallway was neither an exit, a corridor, nor an exit corridor, and that the single-step riser was not part of a means of egress.
To assess this argument, one must return to the exact text of § 27-371 (h) and definitions of words appearing in it. Building Code § 27-371 (h) provides: "Floor level. The floor on both [*3]sides of all exit and corridor doors shall be essentially level and at the same elevation for a distance, perpendicular to the door opening, at least equal to the width of the door leaf, except that where doors lead out of a building the floor level inside may be seven and one-half inches higher than the level outside." A corollary issue is what constitutes a corridor door. (Plaintiff does not claim that the door separating the coat room from the hallway was an exit door.) Building Code § 27-232 provides the following definition for "Corridor": "An enclosed public passage providing a means of access from rooms or spaces to an exit. (See EXIT PASSAGEWAY.)" In turn, "exit" is defined as "A means of egress from the interior of a building to an open exterior space which is provided by the use of the following, either singly or in combination: exterior door openings, vertical exits, exit passageways, horizontal exits, interior stairs, exterior stairs, fire towers or fire escapes; but not including access stairs, aisles, corridor doors or corridors" (id.).
As applied to the premises at issue, the door separating the coat room from the hallway in the basement was indeed a corridor door and, as such, the floor on both sides had to be essentially level. They were not. The floor on the coat room side of the door was higher than the floor on the hallway side. Parsing out the pertinent verbiage and applying the quoted definitions, the hallway on the other side of the door was a corridor because it was an enclosed public passage providing a means of access from a room (the coat room) to an exit, as "exit" includes interior stairs which constitute a means of egress from the interior of the building to an open exterior space. The basement hallway (whose floor level was lower than the floor level of the coat room), fitting within the definition of a "corridor," contained two stairways, one of which led to the street (as per Martin Fleischman, Defendant's deposed witness, at page 40 of his testimony). Defendant would limit "exit" to the actual door leading outside. That is contrary to the definition of "exit," which also includes interior stairs providing egress from the building. "Interior Stair" is defined as "A stair within a building, that serves as a required exit" (NYC Building Code § 27-232). In fact, Defendant's Exhibit I depicts the doorway to the interior stairs leading to outside with the "EXIT" sign to its right, at the end of the hallway ("corridor"). Hence, the subject door separating the coat room and the hallway was a "corridor door" concerning which both sides had to be essentially level. Being a "corridor door," it is irrelevant that this door was not an "exit door." Using Defendant's terminology, the hallway was both a "corridor" and an "exit corridor."
Defendant incorrectly asserts on page 11 of its reply memorandum of law that "The basement was not an enclosed public passage and it did not lead to an exit." While the basement overall may not have been an enclosed public passage, the hallway was — it constituted a "corridor" leading to an exit, "exit" being a word including the interior stairs at the end of the hallway, marked "EXIT," and leading upwards to the outside. And, therefore, the door between the coat room and the hallway was a "corridor door," carrying with it a need to comply with § 27-232's provisions.
In drafting New York City's Building Code, "the interest of public safety, health and welfare" was taken into account (NYC Building Code § 27-102). Its provisions, including the one at issue, are designed to protect those who look straight ahead and not at the floor, those who may see a stumbling block at first and not realize it later on, and those whose eyesight may not even be perfect. Unless a defendant charged in a personal injury action can establish absolute freedom from liability under Code provisions cited by a plaintiff, summary judgment does not lie, and the issues of defendant's negligence and proximate causation, and possibly plaintiff's [*4]comparative negligence and proximate causation, must be adjudicated by a jury.
Since Defendant failed to meet its prima facie burden of establishing that Building Code § 27-371 (h) did not apply, it is unnecessary to assess whether Defendant established prima facie that the single-step riser was an open and obvious condition with respect to common law negligence. However, the Court finds that Defendant also failed to make out a prima facie case that the single-step riser was an open and obvious condition.
In dealing with single-step risers located between surfaces which are not on the same level plane, i.e., one surface is higher then the other, it is manifest that what might be open and obvious for someone traversing from the lower plane to the higher one is not necessarily open and obvious for one traversing from the higher plane to the lower one. Here, Defendant's Exhibit I (the photo which depicted the EXIT sign at the end of the hallway), is taken from the perspective of someone standing in the hallway and looking toward the coat room at the left. One sees the floor of the coat room — that it is higher than the hallway floor by a good number of inches. However, Defendant did not submit a photo taken from inside the coat room and looking at the hallway. That perspective would be different. One standing on the higher level side of the doorway will not necessarily be able to discern that the coat room floor is higher than the hallway floor. Plaintiff tripped while walking from the coat room into the hallway. It is easily understandable that she might not have perceived that the coat room floor was higher than the hallway floor had she looked down.
Defendant argued, in effect, that this does not matter because Plaintiff was not looking down. Defendant testified at page 45 of her deposition transcript that she "[d]id not look down" but "I looked straight ahead." Later on, after a break, at page 52, she testified, "I was looking straight ahead and I saw the - - the - - to me, everything looked level. . . ," in response to a question about something else — her glasses. The first statement is the controlling one — Plaintiff did not look down. But this is irrelevant, for, as stated by Defendant in its initial memorandum of law (page 5), "The standard is not whether the plaintiff observed the condition." Continuing in the memorandum of law, "Arguably, the accident would not have occurred if the plaintiff had observed the condition. Rather, the determinative factor is whether the condition was readily observable." And, without a photo taken from inside the coat room, depicting the doorway and the hallway, Defendant has not put forward prima facie evidence that the transition from the higher floor level to the lower one was open and obvious, especially since the facts must be viewed in the light most favorable to Plaintiff. Therefore, it is irrelevant that the floors of the coat room and the hallway differed in color, thereby minimizing optical confusion, and that there were no prior complaints or accidents, points made by Defendant.
A tenant, like the landlord, has a common-law duty to keep premises in a reasonably safe condition, independent of any obligation which might be imposed upon the landlord (see Zito v 241 Church St. Corp., 223 AD2d 353, 355 [1st Dept 1996]). Without Defendant establishing compliance with this common law negligence principle, it failed to establish as a matter of law on its motion for summary judgment, that it was not liable. Together with the fact that Defendant did not establish prima facie the inapplicability of Building Code § 27-371 (h), the Court need not address the sufficiency of Plaintiff's opposing papers (see CPLR 3212 [b]; Smalls, 10 NY3d 733 [2008]; Alvarez, 68 NY2d at 324; Winegrad, 64 NY2d at 853; Surujnaraine, 88 AD3d at 867).
Nonetheless, assuming arguendo that Defendant had established a prima facie case to the effect that it was not negligent, Plaintiff submitted proof demonstrating the existence of an issue [*5]of fact, in the form of the affidavit of its expert, Scott Silberman, P.E., who, after a thorough analysis of the premises, opined that the single-step riser violated Building Code § 27-371 (h) as well as other provisions of the New York City Administrative Code. Mr. Silberman disputed a main premise of Defendant — that the issuance of certificates of occupancy proved compliance with the Building Code: "A C/O only confirms that the paperwork has been completed; that all fees have been paid to the Department of Buildings; that all relevant violations have been resolved and that all necessary approvals have been received from other City Agencies. It does not mean that the City has performed their own inspections nor does it mean that they performed 100% review of the plans for the project to ensure full compliance with the Building Code." Mr. Silberman also referred to photos of the location which he took. Plaintiff submitted them, along with other photos, all showing the hallway floor near the doorway. The photos taken from inside the coat room do not depict an open and obvious condition — because from that perspective one cannot see the 90-degree vertical rise. Again, this demonstrates an issue of fact as to Defendant's common law negligence.
Defendant argued that cases in which the Appellate Division found single-step risers open and obvious are legion, yet this court found them distinguishable upon review. Coppola v Cure of Ars R.C. Church (119 AD3d 726) involved a fact pattern where the plaintiff had been at the subject premises numerous times over the years, which was unlike the instant case. Also, the defendant therein had submitted expert substantive evidence concerning the condition, whereas here Mr. Pitera had not even visited the location and did not opine on the applicability of Building Code § 27-371 (h). Defendant cited to Franchini v American Legion Post (107 AD3d 432 [1st Dept 2013]), where the defendant had in fact submitted photographic evidence demonstrating that the step was open and obvious, unlike the case at bar. In Murray v Dockside 500 Marina, Inc. (32 AD3d 832, 833 [2d Dept 2006]), "the defendants presented proof showing that the site in question complied with existing code requirements," unlike here. The plaintiff in Smith v South Bay Home Assn., Inc. (102 AD3d 668 [2d Dept 2013]) ascended a single step to a stage when she allegedly fell, whereas Plaintiff in the instant case descended to a lower floor level. Finally, the defendant in Capio v U.S. Bank N.A. (234 AD3d 919) submitted expert opinion evidence that there was no violation of any known applicable code or standard, in contrast to Mr. Pitera, who did not opine as such.
Defendant's reliance on Westra v Ten's Cabaret Inc. (2009 NY Slip Op 31521[U] [Sup Ct, NY County 2009]) is misplaced. The court there dealt with whether the stairs upon which the plaintiff fell constituted "interior stairs" and, hence, whether the safety requirements (handrails and constant riser height and tread) of Building Code § 27-375 applied. In the instant case, Plaintiff fell on the single-step riser between the coat room and the hallway. This was not an "interior stair." In the instant case, the "interior stairs" were at the end of the hallway, were labeled an "EXIT," and they were the stairs leading to outside. What connected the single-step riser and the interior stairs was the hallway-corridor. The single-step riser was a corridor door and, therefore, the adjoining floors had to be essentially level, per a different Code section, § 27-371 (h). One cannot equate the stairs in Westra with the single-step riser here.
In conducting this Court's own research, other decisions granting defendants summary judgment are also distinguishable. According to the defendant's motion court memorandum of law in Nelson v 40-01 Northern Blvd. Corp. (95 AD3d 851 [2d Dept 2012]), which held that the single-step riser was open and obvious, the plaintiff failed to cite any violations of any applicable codes, a factor clearly not present here. "[S]igns on the outside of the bathroom door [*6]warning individuals entering the bathroom to watch their step," distinguish Varon v New York City Dept. of Educ. (123 AD3d 810, 810 [2d Dept 2014]) from the case at bar. Similarly, in Bretts v Lincoln Plaza Assoc., Inc. (67 AD3d 943 [2d Dept 2009]), there was a sign stating "Watch Your Step" adjacent to the step. In Tyz v First Street Holding Co., Inc. (78 AD3d 818 [2d Dept 2010]), a village inspection performed on a prior date failed to find any applicable code violations. That the plaintiff's expert affidavit was speculative and conclusory distinguishes Zeolla v Town of Stanford (134 AD3d 1100 [2d Dept 2015]) from the instant case.
Further, even if visual cues are present to alert people of a height differential at a single-step riser, that does not ipso facto mean that a defendant is entitled to summary judgment (see Kernell v Five Dwarfs, Inc., 207 AD3d 622 [2d Dept 2022]). Attempts by defendants to obtain summary judgment in single-step riser accident cases where they claimed "open and obvious" were rejected in other cases (e.g., Ross v Bretton Woods Home Owners Assn., Inc., 151 AD3d 774 [2d Dept 2017]; Surujnaraine, 88 AD3d 866; Roros, 54 AD3d 398).
Accordingly, based on the foregoing analysis, it is hereby ORDERED that Defendant's motion for summary judgment dismissing Plaintiff's complaint is DENIED.